*1266 OPINION.
Arundell :
A number of errors are alleged in the petition, but the substance of them is that the respondent erred in refusing to allow a deduction of $100,000 either as a loss sustained or a debt ascertained to be partially worthless in 1924. It is obvious from the facts in this case, and it is not denied by the respondent, that at the end of 1924 Park was out of pocket something over $100,000. This, however, does not establish that he is entitled to a deduction. For tax purposes only those losses are allowable that are specified by statute and are, in the order, set out in section 214(a) of the Revenue Act of 1924, losses incurred in trade or business, losses incurred in transactions entered into for profit, and losses arising from casualties.
It is plain that the loss was not the result of a casualty as contemplated by the statute, and no claim is made that it was such a loss. It is almost equally evident that a loss of this kind is not one incurred in trade or business, as it is not a part of the trade or business of the president and directors of a corporation to make good the latter’s losses. “A director of a corporation is not engaged in the business of the corporation.” Snider B. Ward, 18 B. T. A. 326, 328.
The principal claim of petitioner is that the loss was incurred in a transaction entered into for profit. We can agree with the argument that when a business man becomes president and director of a bank it is probably with an eye to the profit that will inure to him *1267 from the successful operation of the bank. But it does not follow that every expenditure he makes while president and director can, be considered a loss because somehow connected with the office he holds. And so with Park. His putting up a substantial sum to make whole the capital of the bank, while commendable as an eifort to keep the doors of the bank open and save the depositors from loss, can not be regarded as a transaction entered into for profit. It was entirely outside the scope of his duties as president and director. It may be, as argued, that if the bank closed Park faced a possible loss of business reputation and suit for failure to properly supervise the activities of the embezzling treasurer, but this still would not stamp his payment as a transaction entered into for profit. We had an almost exactly similar situation in B. Estes Vaughan, 15 B. T. A. 596, and 17 B. T. A. 620, in which the president of a national bank, following the defalcation of the assistant cashier, turned over to the bank securities having a cost and value of something over three times the par value of his stock in addition to paying his pro rata share of an assessment levied on stockholders. A loss deduction was claimed by reason of the payment of the securities into the bank in order to prevent its being closed. We held:
Petitioner might have taken his loss by permitting the bank to be liquidated. In that ease he would have been permitted his deduction. He chose instead to put more funds into the venture, giving it new life. This new investment can scarcely be termed a loss as the term is used in the revenue act, despite the compelling circumstances under which the funds were paid over to the corporation. While these funds left the hands of petitioner, they went to enrich a corporation in which he was a substantial stockholder. Until the result of his investment in this stock is determined by a sale or liquidation of the corporation, it can not be known whether there will be gain or loss.
About the only distinction between the facts in the two cases is that in the Vaughcm case there was a double liability on the part of stockholders, and here there was none. But, as pointed out above, Vaughan met this liability and in addition paid in a substantial sum ’ in securities, and so this attempted distinction vanishes. We think this case is ruled by the decision in the Vaughan case, and on authority of that case we hold that Park sustained no deductible loss by reason of his payment to the bank in 1924.
We are also of the opinion that the claim for a bad debt deduction can not be allowed. This deduction is sought on the ground that the bank’s claims against Berker and Finn which were assigned to Park turned out to be partially bad before the close of the year, a comparatively small amount having been collected within the year. The answer to this is that the money put up by Park was not a loan and there was no “debt,” in the sense used in the Revenue Act, owing to him.

Decision imU T>e entered for the respondent.