## MILTON BRADLEY CO. v. UNITED STATES.

### No. 4031.

Circuit Court of Appeals, First Circuit.

Dec. 22, 1944.

Thomas V. Moriarty and Ralph W. Crowell, both of Springfield, Mass., for appellant.

John F. Costelloe, of Washington, D. C., A. F. Prescott and Mamie S. Price, Sp. Assts. to the Atty. Gen., Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This case presents the question whether a claim for refund of excise taxes which has been barred by the statute of limitations is deductible as a bad debt or loss in the computation of net income in the year in which the statute ran.

The taxpayer, Milton Bradley Company, is a Massachusetts corporation engaged in the manufacture of jigsaw puzzles. Under Section 609 of the Revenue Act of 1932, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, page 612, imposing a 10% excise tax on sporting goods and games, the taxpayer paid taxes in 1932 and 1933 in the amount of $40,-260.73. In its income tax return for 1933 the taxpayer deducted $35,288.57 as taxes paid. It took no deduction for the remaining $5,032.16, representing taxes applicable to 1932.

Upon November 8, 1937, the United States Supreme Court decided in White v. Aronson, 302 U.S. 16, 58 S.Ct. 95, 82 L.Ed. 20, that jigsaw puzzles were not games within the meaning of Section 609, supra. Thereafter the taxpayer filed refund claims which were allowed for the taxes paid in October, November, and December, 1933, in the amount of $1,782.77. As to $38,477.96 paid earlier in 1933, that claim was disallowed on the ground that the running of the statute of limitations barred the recovery of that amount. The taxpayer's return for

1937 showed a tax liability of $19,558.51. It seasonably filed a claim for refund of $1 of this tax or such greater amount as may be allowable. That claim was disallowed in full by the Commissioner. The taxpayer thereupon brought suit in the District Court for $9,870.64, the amount by which its tax would have been reduced if it were allowed to take the $38,477.96 claim as a deduction upon its 1937 tax return. The taxpayer's theory was that the running of the statute of limitations in 1937 constituted the claim a bad debt or loss within the meaning of § 23 of the Internal Revenue Act.[1] The lower court granted the government's motion to dismiss the complaint on the ground that the taxpayer had failed to follow the procedure prescribed for the recovery of taxes erroneously or illegally collected, without deciding whether the running of the statute of limitations converted this claim against the government into a deductible loss or bad debt. This is the only question before us on this appeal.

■ It is well settled that tax deductions are a matter of legislative grace and that a particular deduction will be 'allowed only where there is clear provision in the statute for the deduction claimed. New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; see McDonald v. Commissioner, 65 S.Ct. 96. For this tax claim to be deductible in 1937 as a bad debt or loss it must come clearly within the meaning of Section 23(f) or (k). In our opinion it does not fall clearly within the coverage of either section.

■ The timely filing of a claim for refund by the taxpayer and the allowance of that claim are prerequisites to any liability to pay on the part of the Commissioner. Under the statute an amount is deductible as a bad debt where there is a valid debt arising out of a debtor-creditor relationship. Hamlen v. Welch, 1 Cir., 1940, 116 F.2d 413; Allen-Bradley Co. v. Commissioner of Internal Revenue, 7 Cir.,

1940, 112 F.2d 333; Harmount v. Commissioner of Internal Revenue, 6 Cir., 1932, 58 F.2d 118; Domhoff & Joyce Co. v. Commissioner of Internal Revenue, 6 Cir., 1931, 50 F.2d 893. One of the underlying conditions of validity is an unconditional obligation of the debtor to pay the creditor. "The debts which the statute permits to be charged off when ascertained to be worthless are debts where there is an obligation of the debtor to pay and a right of the creditor to receive and enforce payment." J. S. Cullinan· v. Commissioner of Internal Revenue, 19 B.T.A. 930. "The sine qua non of a debt is the obligation to pay. * * * And this means not a contingent obligation, * * *." Wolff v. Commissioner of Internal Revenue, 26 B.T.A. 622, 626, and cases cited. The liability to pay in the future, contingent upon something which may or may ·not occur, is not indebtedness, and the taxpayer may not treat as worthless debts amounts which are at a particular time merely contingent liabilities. Eckert v. Burnet, 1931, 283 U.S. 140, 51 S.Ct. 373, 75 L.Ed. 911; S. Naitove & Co. v. Commissioner of Internal Revenue, 1929, 59 App.D.C. 53, 32 F.2d 949; Wolff v. Commissioner, supra. Where the liability to pay is not absolute, the existence of a deductible debt has not been accepted. Howell v. Commissioner of Internal Revenue, 8 Cir., 1934, 69 F.2d 447, certiorari denied Howell v. Helvering, 1934, 292 U.S. 654, 54 S.Ct. 864, 78 L.Ed. 1503; American Cigar Co. v. Commissioner of Internal Revenue, 2 Cir., 1933, 66 F.2d 425 certiorari denied 1933, 290 U.S. 699, 54 S.Ct. 209, 78 L.Ed. 601; In re Park's Estate, 2 Cir., 1932, 58 F.2d 965, certiorari denied, 1932, Park's Estate v. Commissioner of Internal Revenue, 287 U.S. 645, 53 S.Ct. 91, 77 L.Ed. 558. The taxes in question here were collected under color of right. The timely filing of a claim for refund is a condition precedent to the recovery of such taxes, and unless that claim is timely filed the statute in effect provides that the Com-

---

[1] Internal Revenue Act of 1936, Ch. 890, 49 Stat. 1648, 26 U.S.C.A. Int.Rev. Acts, pp. 827, 828.

"§ 23. Deductions from Gross Income

"In computing net income there shall be allowed as deductions:

* * * * * *

"(f) Losses by Corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.

* * * * * *

"(k) Bad Debts. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction."

missioner is under no liability to pay. After the running of the statute of limitations the right of the creditor to receive and enforce payment has been foreclosed. Since the obligation of the Commissioner to pay can arise only upon the timely filing of a claim for refund and cannot exist before that is done—and it was never done here—the Commissioner was under no liability to pay. We therefore hold that this claim for refund barred by the statute of limitations is not deductible as a bad debt under Section 23(k).

For the same reason it cannot be deducted as a loss under Section 23(f). Conceding that the amount of the claim is certain and that the date of its loss is certain, the timely filing of the claim for refund is a condition precedent to recovery of the taxes. Until that is done the taxpayer's claim is contingent, and it cannot therefore be treated as a deductible loss. In Lucas v. American Code Co., 1930, 280 U.S. 445, 450, 50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010 the Supreme Court said: "Obviously, the mere refusal to perform a contract does not justify the deduction, as a loss, of the anticipated damages. For, even an unquestionable breach does not result in loss, if the injured party forgives or refrains from prosecuting his claim. And, when liability is contested, the institution of a suit does not, of itself, create certainty of loss."

The judgment of the District Court is affirmed.

MAGRUDER, Circuit Judge (concurring).

I agree that it would be somewhat of a strain on the ordinary meaning of "debts ascertained to be worthless and charged off within the taxable year" to allow this as a bad debt deduction under § 23(k).

But where, under the law, a refund may be had for the asking, it would seem that the taxpayer has something of value—an "asset" within the dictionary definition. And when this asset vanishes, is irrevocably lost, upon the running of the statutory period for filing a refund claim, why has not the corporation suffered a "loss" within the meaning of § 23(f)? The very novelty of the argument may make us suspicious of its validity, but it is not easy to formulate the reason for rejecting it. It is not entirely convincing to say that to allow the deduction for a loss in the year in which the statute ran on the original claim for refund would be indirectly to allow in part the outlawed refund claim. The deduction, if allowable, operates only as an offset against income, and if there happened to be no income in the year in which the original refund claim was outlawed, the deduction would afford no tax benefit. This demonstrates, the taxpayer says, that the claim for a loss deduction is not in an accurate sense a claim for refund of any part of the original overpayment.

In this particular case, the original claim for refund, if it had been timely filed, would have been of indisputable validity, founded upon a square decision of the Supreme Court. But the merits of claims for refund are not always so clear, either in fact or in law. Where a refund claim is made within the four-year statutory period, it is the Commissioner's duty to examine into and rule upon the questions of fact or law presented. However, if the taxpayer's present contention were accepted, the result would be in fact a doubling of the statutory period within which the Commissioner might have to examine into the questions of fact or law determinative of whether there had been an original overpayment of taxes in 1933. That is, the taxpayer contends that it was entitled to claim a loss or bad debt deduction in its return for 1937, the year in which the original claim for refund was outlawed and lost; that the failure to claim such deduction resulted in an overpayment of about $10,000 in 1937; and that a refund of this latter overpayment may be claimed within a further four-year period, bringing it down to 1941. But this second refund claim would put in issue the question whether there had been an original overpayment in 1933—involving the very issues of fact or law which had been foreclosed by the running of the statute of limitations on the original refund claim. Indeed, the logic of the taxpayer's contention would go further: if the taxpayer had let 1941 go by without filing its second refund claim based on its failure to include a loss deduction in its return for 1937, then the taxpayer would have suffered another loss in 1941; and if its failure to claim that loss in its 1941 return should result in an overpayment for that year, the taxpayer would have four more years within which to file a third claim for refund. But such a refund claim, filed in 1945, would carry us back to the issues of fact or law raised by the assertion that there had been an original overpayment in 1933.

Such a result would be so clearly in derogation of the policy of the statute of limitations that the novel interpretations of § 23(f) and (k) here advanced ought to be rejected.