## SISTO FINANCIAL CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 214.

Circuit Court of Appeals, Second Circuit.
April 27, 1945.

Robert C. Vincent and Charles J. Colgan, both of New York City, for petitioner.

Bernard Chertcoff, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen. (Willkie, Owen, Otis, Farr & Gallagher, of New York City, of counsel), for respondent.

Before L. HAND and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is a sequel to our decision upon an appeal of the Commissioner from an order of the Tax Court, expunging an assessment for deficiency in the taxpayer's income tax for the year 1936. Commissioner of Internal Revenue v. Sisto Financial Corporation, 139 F.2d 253. The only question then left open was the value of 159,899 shares of the stock of the Barium Stainless Steel Corporation, received by the taxpayer on August 31, 1936, in exchange for the notes of a predecessor to that corporation—the Barium Steel Corporation. Upon the present trial the taxpayer introduced two expert witnesses who swore that the shares were on that day worth not more than one dollar a share; and J. A. Sisto, its president, who swore that they were worth only fifty cents a share. This testimony it buttressed by evidence as to the unsuccessful business of the Barium Steel Corporation for several years before 1936. The Barium Steel Corporation sold all its assets to the Barium Stainless Steel Corporation for 232,400 shares of that company, of which the taxpayer received the number mentioned above in exchange for the notes just mentioned which with accrued interest came to $242,000. During the year 1936 the taxpayer sold more than 31,000 of these shares at prices varying between $3.12½ and $4, and reported a "gain" upon them, computed upon a "basis" of $1.516 a share, (arrived at by dividing its claim of $242,000 by the number of shares received, 159,899). During the first nine months of 1937, it sold 29,000 more of these shares at between $3.50 and $7.3/8. On August 18, 1936, the Barium Stainless Steel Corpora-

tion had given an option upon 200,000 other shares of its stock at three dollars to a firm of brokers, J. A. Sisto & Co., consisting of J. A. Sisto, just mentioned, who had a nine tenths interest in it, and one, Cohn, who had one tenth. That firm held 18,768 shares of the taxpayer out of 30,690, although 18,-000 of these had been pledged to two banks.

On September 3, 1936, the Barium Stainless Steel Corporation filed a statement with the Securities and Exchange Commission in order to "register" its issue, in which it declared that the 200,000 shares just mentioned were to be sold to the public at $3.75 a share, out of which three dollars was to go into its treasury. This statement became effective twenty days later—September 23—and on that day J. A. Sisto & Co. took up the option and issued a circular letter to a "select list of dealers" offering the shares for sale at $3.75. Before the end of the month they had secured subscribers for substantially the whole issue, although the record does not show at what prices these sold to the public. The taxpayer's only attempt to account for any rise in value of the shares between August 31 and September 23, 1936, was an article which had appeared in "Iron Age" on September 17th, the successful flotation of some airplane shares by J. A. Sisto & Co., and the fact that the registration of the shares had become effective. The Tax Court found that the value as of August 31 was three dollars; and it refused to refer the case to the whole court, or to reopen it for the admission of newly discovered evidence. This finding and these two refusals are the only questions before us.

Concededly, our powers of review are very straitly limited upon all issues of fact (Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 599, 600, 51 S.Ct. 608, 75 L.Ed. 1289), and that limitation is particularly narrow when the issue is one of value. Although on August 31, 1936, there was nothing that could be called a market for the shares, that ceased to be true after September 23, when they began to be sold. True, there was not then a market in the sense that we apply that word to the sale of shares actively traded in up-on an exchange, but that is not necessary; the trading was substantial and indeed, as we have said, the subscribers to the shares taken up by J. A. Sisto & Co. committed themselves for nearly 200,000 shares. It would be absurd to deny that throughout the balance of the year the Tax Court had any basis, or indeed the most ample warrant, for appraising the value at three dollars. Whether there was a solid foundation for any such value in the sense of a reasonable probability that it would endure, the Tax Court need not have considered; it was enough that the shares could be exchanged and were exchanging at more than that price. The taxpayer does not argue, and, indeed, would have gained nothing if it had argued, that the price was the result of juggling the market; it stood as datum from which to infer what the price had been three weeks earlier. Nothing had changed in the interval which could conceivably have affected the value of the shares except the three events of which we have already spoken, and we have nothing to indicate that these had any actual effect except the testimony of Sisto and of one of the experts called by the taxpayer. Obviously, the effect of these events upon the shares was wholly speculative; and it is clear that they could not have been a factor in the expectation of J. A. Sisto & Co. on August 18, and of the Barium Stainless Steel Company on September 3, when each proposed to put the shares upon the market at the price at which they were in fact sold later. Moreover, it needs no argument that all such factors were for the Tax Court finally; and that an allowance for them of seventy-five cents off the selling price was not too little. Finally, the court was certainly not bound to accept the taxpayer's rebutting testimony. As for that of Sisto himself, if, as he swore, the shares had been worth only fifty cents on August 31, he had already laid a plan to defraud the public by selling them at seven times their value before any of those circumstances had arisen which the taxpayer even pretends to account for the rise. It cannot complain if the court treated his appraisal as having not the slightest probative force. The testimony of the other two experts was not indeed impeached; but it was not conclusive (Uncasville Manufacturing Co. v. Commissioner of Internal Revenue, 2 Cir. 55 F.2d 893, 897), and its weight was finally to be measured by the Tax Court, a proposition which it appears very hard for the bar to accept. Moreover, we may conclude, had the case come before us in the first instance, we should have had not the slightest difficulty in coming to the same decision.

It is not necessary to do more than allude to the other two points. The power to call for a review by the whole

270

court rests with the presiding judge (§ 1118(b), Title 26 U.S.C.A. Int.Rev.Code); his decision is not reviewable by us for any reason; it is a detail of intramural administration. The motion to reopen the hearings for newly discovered evidence was properly denied. Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 312, 313, 53 S.Ct. 150, 77 L.Ed. 325.

Order affirmed.