**AGARANO v. UNITED STATES.**

Civ. No. 1046.

United States District Court
D. Hawaii.

March 12, 1953.

As Modified March 23, 1953.

Bouslog & Symonds and Clarence Garvey, Jr., Honolulu, Hawaii, for plaintiff.

Charles S. Lyon, Asst. Atty. Gen., Andrew D. Sharpe and J. W. Hussey, Sp. Assts. to Atty. Gen., A. William Barlow, U. S. Atty., Dist. of Hawaii, Honolulu, Hawaii, for defendant.

McLAUGHLIN, Chief Judge.

Plaintiff, an unmarried taxpayer, residing in Honolulu, Hawaii, filed his income tax return for 1949 using the short form on February 6, 1950. An excess of salary withheld over taxes due appeared, which was refunded. He amended his return about two weeks later. On both returns, he computed tax liability on the tables provided by the Government on the short form, his income being in both cases less than $5,000. The short form takes into account an overall allowance arbitrarily set at about 10% of each income bracket for miscellaneous losses, or deductions. In the amended return, however, he claimed an exclusion of the amount of a bad debt, defined under IRC § 23(k) (4), 26 U.S. C.A. § 23 (k) (4). This served as the basis for his claim to the additional refund of tax, and reflected a loss caused by the liquidation of the Oriental Benefit Association (OBA) of which plaintiff was a member. He had been paying dues and assessments to it for several years, in the expectation of receiving at some time the benefit payments for travel provided for in its Constitution and By-Laws. In the normal course of events these travel benefits, plus certain other benefits possibly accruing irrespective of travel, would be of substantially greater value than he had paid in money as dues and assessments. The travel benefits were sums of money, in amounts varying with length of time of

membership, which would be paid the member on his departure to whatever part of the Orient had been his home before coming to Hawaii, or on his departure for a visit to continental United States.

Plaintiff never did travel under these provisions, though he did apply for benefits for travel in 1940; wartime restrictions, however, prevented his receiving them.

On dissolution of the Association, first begun in 1948 and completed in 1949, it appeared that although plaintiff had paid in some $774 since joining in 1936, he had received no money except his liquidation dividends totaling $292.02. The difference between these sums represents the loss claimed by plaintiff as a bad debt.

The Constitution and By-Laws, plaintiff's Exhibit B–1 in the record, indicate that benefits might accrue to members upon certain events, such as death, marriage, or the necessity for counsel for a meritorious defense of criminal charges. Upon application, travel benefits in graduated amounts depending upon length of membership were provided for. Funds for these were to be derived from dues payments, and from assessments upon other members to make up deficiencies in the general funds, if any. No travel benefits would be due without application by the member and approval by the Board of Directors. If a member, having received travel funds, postponed his departure, his claim was cancelled and he was obliged to refund any money he had received for such travel.

### Statement of Issues.

On the basis of this agreement, the Government, contends in resisting the claim for refund, that a bad debt is not shown to have existed. Instead, it argues that a loss in a transaction entered into for profit under IRC § 23(c) (2) resulted. Due to technical differences in the treatment of losses in these two categories, under this theory a recomputation of tax is required to be done on the long form of return; further, this type of loss is not excluded from adjusted gross income as in the case of a bad debt, but is deducted from total income received. This eliminates the possibility of benefit from both the arbitrary "blanket" deduction supplied by the short form table and the exclusion of the so-called bad debt. Instead, when the long form is used, deductions in the nature of losses must be itemized, and there is no substitute blanket deduction.

If it is a bad debt, as the plaintiff claims, then under the present interpretations of the Code, the amount of the loss is treated as an exclusion from income—as if total income were so much less than it was in fact. Therefore, the total of income reported, and tax paid, without excluding this amount, would be too large, and recomputation taking this into account would indicate that a refund would be due. In plaintiff's recomputation the short form could still be used, with the additional benefit of the continuing 10% blanket deduction.

### The Nature of the Loss.

Section 23(k) (4) of the Internal Revenue Code provides that non-business bad debts may be allowed as deductions from gross income, as if they were losses from the sale or exchange during the taxable year of a capital asset held not more than six months.

Section 22(n) (6) defines adjusted gross income as gross income less the deductions allowed by section 23 (as losses from the sale or exchange of property). The language of these two sections is interpreted as meaning that a non-business bad debt, once established as such, is excluded from any computation of adjusted gross income, one of the steps in arriving at net income, on which the tax is imposed.

But to qualify as a bad debt, and thus as an exclusion, it must appear that the obligation to pay is certain and actually in existence, since the term "debt" as used in this section implies an unconditional obligation to pay. Bercaw v. Comm. of Internal Revenue, 4 Cir., 1948, 165 F. 2d 521, and excludes contingent liabilities: Milton Bradley Co. v. United States, 1 Cir., 1944, 146 F.2d 541.

If we refer to the Constitution of the Association, presumed to have been in the

contemplation of the parties as the basis for their agreement when plaintiff joined, it appears that certain factors make any obligation of the Association conditional, and not absolute obligations to pay money to the plaintiff. This is true, even though the travel benefits, believed to be the main consideration of membership in this Association, were made certain in their amounts, once the application was approved by the Directors, according to a specified schedule. For example, the so-called "local" benefits, such as "gifts" upon marriage, payment of $250 on death, and contribution to defense funds to criminal charges, all depend upon the pre-existence of at least one condition: the existence of either a marriage, a death of a member, or the institution of criminal proceedings against a member. Most of these are subject to the discretion of the directors as to the amount, and whether they will actually be received at all. (See Plaintiff's Exhibit B, Amended By-Laws, art. VIII p. 12.) The travel benefits, while not apparently subject to such wide discretion of the directors, do at least depend for their life as active claims upon the statement of the member that he has decided to travel, and upon approval by the Directors of the claims, as being in conformity with the length of time the applying member had belonged to the Association. Also, any payment of such funds is expressly conditional upon their use for the purpose of travel, and for no other purpose (Plaintiff's Exhibit B, art. VIII, sec. 2, p. 14).

■ While it appears that this plaintiff did once apply for travel funds, it also appears that approval could not be granted, nor any funds so used at that time because of war restrictions on travel. Thus that particular application would have been cancelled through non-use. Even if the sum were still considered due at the end of the restrictions, no effort was made by plaintiff to obtain the funds, as money due him for an immediately contemplated trip. No other applications appear to have been made, and it therefore seems that this claim is not a final, absolute obligation to pay on the part of the Association.

Even if it were so considered, the amount of such a debt should be determined by the amount the debtor's contract obliged him to pay, and not by the amount of consideration the plaintiff had paid for his rights originally. Here, the amount of travel benefit which could have been received under normal conditions could not have exceeded $500, according to the schedule of payments in the Articles (Plaintiff's Exhibit B, art. VIII, § 1); this, then, should serve as the basis from which to deduct dividends on liquidation, to arrive at the amount of the loss claimed by plaintiff, if he is to claim it as a bad debt.

Cited by both parties, Thomson v. Comm. of Internal Revenue, 1951 P-H T. C. Memorandum Decisions, par. 15,019, Jan. 18, 1951, deals with a situation somewhat similar. There, the taxpayer belonged to more than one retirement benefit association, all but one of which found themselves in the same difficulty as the Oriental Benefit Association and these took the same way out: dissolution. The retirement benefits were payable on death or retirement. The taxpayer had retired, and had established his claims to the benefits. His losses incurred on dissolution were allowed as bad debts. The distinction between that case and the present one, however, is that there the taxpayer had fulfilled all the conditions precedent to his right to receive those payments. Here, however, the liability is contingent upon the decision to travel and written application and approval thereof by the Directors for the funds. Further, the right to retain funds once received depends upon their actual use for travel purposes. It is true that the amount of the loss was arrived at in the same manner as this plaintiff computes his—by consideration of the total payments made by the member, instead of the amount he could have received had the contract been carried through. Again, that case can be distinguished, in that the benefit payments in the Thomson case (supra) were to be a certain percentage of the amounts actually paid in, and not determined by an independent schedule. Thus a basis for referring to such payments appeared there, which does not exist in this case.

Another case cited by both parties as pertinent to the nature of the obligation is that of Birdsboro Steel Foundry & Machine Company v. United States, 1933, **3** F.Supp. 640, 644, 78 Ct.Cl. 100: "The relationship of debtor and creditor arises where one person, by contract or law, is liable or bound to pay another an amount of money, certain or uncertain, and it is not necessary that the debt shall be due in the sense that it is then collectible; it must be an outstanding obligation, which, if not due at the time, will certainly become due at some future date." This seems to be generally in accord with the authorities, but does not aid the plaintiff here, since unless some further act or condition were made to happen by the plaintiff himself—decision to travel, application for funds and approval thereof by the Directors, plus carrying out the intent by actual travel, it is clear that the funds for that purpose would not otherwise "certainly become due at some future date."

Plaintiff supports his argument that this loss is a bad debt by analogy to the savings account, in which a balance or credit is built up subject to return at the demand of the depositor, who usually has the right to income in the nature of interest while the money is on deposit. There are important differences, however, between the savings account and the contract with the Association here in question. One is that the Articles provide that, once received, the travel funds must be used for that specific purpose, and no other. If not so used, the member is bound to return the funds to the Association, and is not free to apply them to any purpose he sees fit, as he would be had he withdrawn a savings account. Also, resignation or suspension from the Association leaves him without any claim to reimbursement or repayment (Plaintiff's Exhibit B, art. IV, sec. 12).

While the point is not raised by the pleadings, as such, the Government concedes in its brief that there may be a valid claim for refund, although in a lesser amount, under Internal Revenue Code Section 23(e) (2), as upon a loss in a transaction entered into for profit. Here the loss can be computed by comparing the cost of the contract rights obtained by the plaintiff by his payment of dues and assessments, with his returns in the form of liquidating dividends.

In the light of the foregoing discussion it is held that the loss sustained by the plaintiff in this transaction has not been established as a bad debt, as defined in the Internal Revenue Code; since it appears that the plaintiff has sustained a loss in a transaction entered into for profit under IRC 23(e) (2) and the Government in its brief so concedes, judgment will be for the plaintiff in the sum of $32.18, following the computation suggested by defendant in its Brief Exhibit A.

Dated at Honolulu, Hawaii, this 12th day of March, 1953.