**INMAN–POULSEN LUMBER CO.,**
**Petitioner,**
v.
**COMMISSIONER OF INTERNAL**
**REVENUE, Respondent.**
**No. 13898.**

United States Court of Appeals,
Ninth Circuit.
Feb. 3, 1955.

Ralph R. Bailey, Portland, Oregon, for appellant.

H. Brian Holland, Asst. Atty. Gen., George F. Lynch, Atty. Dept. of Justice, Ellis N. Slack, Lee A. Jackson, Sp. Assts. to Atty. Gen., Kenneth W. Gemmill, Act-

ing Chief Counsel, I.R.S., Washington, D. C., for appellee.

Before HEALY and POPE, Circuit Judges, and BOLDT, District Judge.

POPE, Circuit Judge.

The respondent Commissioner made a determination of a deficiency in the income taxes of the petitioner, here called the Company, for the calendar year 1944. The portion of the deficiency here in dispute arises out of the Commissioner's disallowance of a deduction in the amount of $47,368.76 which the Company claimed on account of an alleged debt to it which it asserted became worthless in that year. Petitioner sought a redetermination of the deficiency before the Tax Court on the ground that its deduction was allowable under § 23(k) of the Internal Revenue Code.[1]

The Tax Court approved the Commissioner's determination of a deficiency and upon the petition to this court for a review thereof, petitioner now for the first time asserts that its deduction was proper under § 23(f).[2]

For the reasons here stated we hold the petitioner's claim cannot be sustained on either ground.

Petitioner is an Oregon corporation with its principal office at Portland and engaged in the lumber manufacturing business since its organization in 1904. Between the years 1929 and 1944 the Company made advances in regular amounts to eight or more of its stockholders including Mrs. Clara Inman deBruin, who was the widow of one of the founders of the Company, and who had inherited from her husband 300 shares of the 1686 total shares of the common stock. It does not appear that any cor-porate purpose was served by the making of these advances to Mrs. deBruin, and apparently they were made for no reason other than that she needed the money.[3] By July 27, 1944, these cash advances to Mrs. deBruin was in excess of $70,000. Throughout this time the Company paid no dividends and by the spring of 1941 the Company was in a dangerously critical financial condition.

In the spring of 1940 certain of the minority stockholders at the annual stockholders' meeting moved to procure a statement and acknowledgment of the amounts which the Company had advanced to Mrs. deBruin, and to other stockholders. As a result of action taken at the annual meeting of stockholders in March, 1941, a letter or written statement was procured from Mrs. deBruin dated December 15, 1941, which recited that in past years certain advances had been made to her aggregating at the date of the letter $68,871.85, but which sum did not include interest. The letter further stated: "These advances were made to and received by me with understanding that all dividends and distributions to which I might be entitled as a stockholder of Inman-Poulsen Lumber Company should be applied against this account until it had been paid in full. It was understood and agreed that the amounts so advanced should be repaid only as above indicated and should not constitute a personal indebtedness." The letter also provided for the assignment to the Company of all dividends and distributions made on account of Mrs. deBruin's stock until the sum mentioned had been paid in full with interest. In January, 1942, the petitioner procured a substantial loan from the Reconstruction Finance Corporation under conditions

1. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions: * * * (k) Bad debts. (1) General rule. Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * *" 26 U.S.C.A. § 23.

2. " * * * (f) Losses by corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

3. $2,225.79 paid Mrs. deBruin after April 20, 1940, was designated as "salary" in the Company's books.

which required it to declare or pay no dividend during the period the loan remained unpaid.

On July 20, 1944, Mrs. deBruin remained the owner of 278 shares of the common stock having previously sold and disposed of 22 shares of the original 300 which she had inherited. On that day she sold 218 shares for $250 per share, receiving a total sum of $54,500. $20,065 of this sum she used to redeem her residence property in Portland from a mortgage foreclosure sale. The balance, or $34,435, she paid to the Company and the Company agreed to accept the same in full settlement of its claim against her. As of December 31, 1943, the aggregate of advances made to Mrs. deBruin with interest thereon amounted to $81,803.76. After applying the cash payment mentioned of $34,435, the balance of $47,368.76 is the bad debt deduction which the petitioner claimed and the Commissioner disallowed.

The Tax Court held that petitioner could not claim the bad debt deduction under § 23(k) first, because there was no debt within the meaning of that section, and second, because there was no evidence the debt was worthless in 1944, the year in which the deduction was claimed. It found that the advances to Mrs. deBruin "were more in the nature of gifts rather than bona fide debts. Clara Inman deBruin was the widow of one of petitioner's founders and for this reason the money was given to her out of sentiment rather than for business purposes." It pointed to the fact that in the year 1944 Mrs. deBruin still retained 60 shares of her stock; that she had recently sold substantially large quantities of stock for $250 a share, and that she also owned her home upon which she had expended $20,065 for redemption from foreclosure sale.

■■ Even if the amounts advanced to Mrs. deBruin became by virtue of their advancement a debt owing to the Company from her, it is manifest that the Company cannot charge off the balance of these advances after receipt of the $34,435 and call the balance a bad debt with Mrs. deBruin still holding these valuable assets. We think that the circumstances are such that the Tax Court's findings that the advances were in the nature of gifts cannot be said to be clearly erroneous. We are satisfied, however, that the letter from which we have quoted above evidenced something less than a debt as that term is used in the application of § 23(k). The term "indebtedness" as used in the Act implies an unconditional obligation to pay, Bercaw v. Commissioner, 4 Cir., 165 F.2d 521, 525; Milton Bradley Co. v. United States, 1 Cir., 146 F.2d 541, 542; Kanne v. American Factors, 9 Cir., 190 F.2d 153, 155.

In the letter which had been drawn for her by the Company Mrs. deBruin attached the condition that the sums mentioned "should not constitute a personal indebtedness". They were to be repaid only if, as and when dividends were paid by the Company. Under these circumstances, where dividends had not been paid for many years by a corporation currently in desperate financial condition, the condition attached was a real one, and plainly enough a debt within the meaning of § 23(k) did not exist.[4]

Petitioner next asserts that it should have been permitted this deduction under § 23(f) as a loss sustained during the taxable year not compensated for by insurance or otherwise. It says that the arrangement by which Mrs. deBruin paid her $34,435 in full settlement of the claim against her was a compromise resulting from arms-length negotiations and hence the remainder of the claim represented a loss.

This contention now made by petitioner was not presented to the Tax Court. It was not even listed in its statement of points to be relied upon on review to this court. The claim to a deduction under

---

4. Petitioner argues that as and when the advances were made to Mrs. deBruin and entered upon the books, a debt was created. The recital in the quoted portion of Mrs. deBruin's letter is to the effect that it was initially understood and agreed that the amounts advanced were not a personal indebtedness.

§ 23(f) is first made in the petitioner's brief. This very different point [5] cannot now be urged for even if it were valid petitioner cannot urge as a ground for reversal a theory which it did not present while the case was before the court below. United States v. Waechter, 9 Cir., 195 F.2d 963, 964.

In any event the point is without validity; there is no evidence whatever that the compromise arrangement with Mrs. deBruin resulted in any loss. Prior to that arrangement all that the Company had was an agreement on her part evidenced by the letter from which we have previously quoted. The only hope that the Company then had that it would realize any sum under that arrangement was purely speculative and dependent upon a marked change of circumstances which would permit it to initiate the payment of dividends which had been suspended for many years. Under its Reconstruction Finance Corporation arrangement such realization would have to await liquidation of the debt to that concern. There is no evidence whatever to indicate that immediately prior to the acceptance of the sum of $34,435 from Mrs. deBruin her contract with the Company was worth one penny more than that sum.

As we find no merit in the petition the same is denied.

---

5. This sort of deduction and that relating to bad debts have been held to be mutually exclusive. Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 189, 54 S.Ct. 644, 78 L.Ed. 1200.