**Elmer J. THOMPSON and Helen H. Thompson, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 14775.**

United States Court of Appeals Ninth Circuit.

June 22, 1956.

Nathan J. Neilson, Los Angeles, Cal., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Harry Marselli, Ellis N. Slack, A. F. Prescott, Stanley P. Wagman, Sp. Assts. to Atty. Gen., for respondent.

Before FEE and CHAMBERS, Circuit Judges, and FOLEY, District Judge.

FOLEY, District Judge.

Respondent Commissioner of Internal Revenue determined an income tax deficiency of $150 for each of the petitioners, Elmer J. Thompson and Helen H. Thompson, husband and wife, for the calendar year 1949. Their claims of bad debt loss arising out of transactions entered into in 1944 and 1946 with one

8. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; Bailey v. Slentz, 10 Cir., 189 F.2d 406.

Jack Miller were disallowed. The determinations of the Commissioner were sustained by the Tax Court of the United States.

The taxpayers have petitioned this Court to review the separate decisions of the Tax Court ordering and deciding that there is a deficiency in income tax of $150 for the year 1949 for each of them. These decisions were made pursuant to that Court's Memorandum Opinion filed January 10, 1955. As will be seen, the separate decisions arose from identical facts. The petitions for review have been argued and are to be considered together.

At a hearing in the Tax Court the Commissioner and the taxpayers stipulated, among other matters, as follows:

"1. On or about the 10th day of July, 1945, the petitioners purported to enter into a limited partnership agreement with Jack Miller, to be known by the name of 'Miller Mining Company,' for the purpose of engaging in a mining business in Arizona by signing a purported limited partnership agreement, * * * the said agreement providing that petitioners were to receive a one-eighth (⅛) interest in and to the profits of the said partnership.

"On or about the 12th day of December, 1945, the petitioners purported to acquire an additional one-eighth (⅛) interest in the aforesaid limited partnership by signing another written agreement, * * *.

"2. The petitioners advanced to the said Jack Miller, in reliance upon and in accordance with the provisions of the aforesaid purported limited partnership agreement, [at various times] the total sum of Fourteen Thousand Seven Hundred Dollars ($14,700.00) * * *."

Partial payments going to make up the $14,700 were made on the dates stated in the stipulation covering a period from February 6, 1945, to April 6, 1946.

The stipulation also recited that the petitioners' United States individual income tax returns for the years 1947 and 1948 disclosed no capital gains.

The Tax Court, in addition to stipulated facts, found the following: No certificate of Limited Partnership was ever executed by the taxpayers or filed with the County Clerk of Los Angeles County, California. No financial statement or copies of partnership tax returns were ever received by petitioners. Their last contact with said Miller was some time near the middle of the year 1947; during that year they received supposed information from said Miller with respect to three allegedly existing mines. No permit authorizing the sale and issuance of securities was ever issued to and including May 21, 1954, by the Department of Investment, Division of Corporations, State of California, to Jack Miller or to Miller Mining Company. The taxpayers received no financial reports of any kind from the operations of the mining venture but did receive a report or reports that there were some sales of ore by Miller to the Kennecott Copper Company; they received verbal assurances that the project was going well and that profits were foreseeable. The petitioners never received any return of money from Miller nor any funds representing profits. During the summer of 1946, petitioners, or one of them, made a trip to Kingman, Arizona, and were conducted through two mines which Miller represented as their mining property in which mines men were working, mine equipment was in evidence and actual gold mining operations were being carried on. Since that time petitioners have not visited the mining site and do not know whether the mine is still operating; they never took any steps to verify Miller's title to the property in question and have no knowledge whether their funds were ever in fact invested in the mining venture.

The petitioners make no attack on the above findings.

Included within the points assigned by the taxpayers as error on the part of the Tax Court are the following:

"(2) The failure to hold that California State law applies to the question of determination of a debtor-creditor relationship resulting from the subject transaction.

"(3) The failure to hold that a debtor-creditor relationship resulted, under both state and federal law, as a result of each of the following events:

"(a) Failure to execute and file Certificate of Limited Partnership.

"(b) Failure to obtain Permit from Division of Corporations to sell and issue interests in a limited partnership where no Certificate of Limited Partnership was filed.

"(c) Failure to obtain Permit from Division of Corporations to Sell and Issue interests in a mining venture.

"(d) Fraud on the part of Jack Miller in failing to disclose that there were other partners and in failing to obtain permit to sell interests."

The questions presented here are:

1. Did the taxpayers suffer bad debt within the meaning of § 23(k) (4) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(k) (4), as a result of their transactions with Jack Miller?

2. If the taxpayers suffered the alleged bad debt, in what year did it occur?

Respondent argues that the record fails to support the taxpayers' claim that a "debt" was ever created or existed between themselves and Miller in the sense that that term is used in § 23(k) of the Internal Revenue Code of 1939 which grants a deduction for bad debts.

In Inman-Poulsen Lumber Co. v. Commissioner of Internal Revenue, 9 Cir., 219 F.2d 159, 161, in considering § 23(k), this Court held:

"The term 'indebtedness' as used in the Act implies an unconditional obligation to pay, Bercaw v. Commissioner, 4 Cir., 165 F.2d 521, 525; Milton Bradley Co. v. United States, 1 Cir., 146 F.2d 541, 542; Kanne v. American Factors, 9 Cir., 190 F.2d 155."

In Bercaw v. Commissioner of Internal Revenue, 4 Cir., 165 F.2d 521, 525, it was held:

"(7) A deduction for a bad debt under Section 23(k) (1) is allowable only if the obligation to pay is certain and actually in existence. 'The term "indebtedness" as used in the Revenue Act implies an unconditional obligation to pay.' Gilman v. Commissioner of Internal Revenue, 8 Cir., 53 F.2d 47, 50, 80 A.L.R. 209.

"(8) The Tax Court quite correctly held that under the agreement between the taxpayer and his wife no debt ever came into existence. The guardian's duty to repay the money only arose in the event of a successful termination of the litigation, and that event never took place. The taxpayer's argument that the guardian did have an unconditional obligation to repay is contradicted by the finding of the Tax Court, and this finding is amply supported by the evidence in the record."

In Gilman v. Commissioner of Internal Revenue, 53 F.2d 47, 50, 80 A.L.R. 209, we find the following from the 8th Circuit:

"(3) A debt is 'that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another, or perform for his benefit.' Webster's New International Dictionary. 'In order to create an indebtedness there must be an actual liability at the time, either to pay then, or at some future time.' Bouv. Law Dict., Vol. 2, page 1531. 'Every debt must be solvendum in praesenti, or solvendum in futuro— must be certain and in all events payable; whenever it is uncertain whether anything will ever be demandable by virtue of the contract, it cannot be called a "debt." While

the sum of money may be payable upon a contingency, yet in such case it becomes a debt only when the contingency has happened, the term "debt" being opposed to "liability" when used in the sense of an inchoate or contingent debt.' * * * The term 'indebtedness' as used in the Revenue Act implies an unconditional obligation to pay. Any definition more flexible would only encourage subterfuge and deception. The 'notes' involved in this case did not constitute a debt of the maker because their payment was contingent upon the payees being alive at the maturity of the instruments in 1950."

Did the said transactions between taxpayers and Miller of and by themselves create unconditional obligations to pay? If the mining venture had been successful, no thought of an indebtedness would have occurred to petitioners. It is clear from their stipulation that taxpayers did not contemplate the creation of any indebtedness. Their agreements created no contingency upon the occurrence of which any part of the sums advanced were to be paid. Petitioners do not contend that the Miller transactions of themselves created an indebtedness but argue that such relationship arose by reason of non-compliance with California statutes having to do with certificates of limited partnership and permits for the sale and issuance of securities.

Petitioners argue that the purported partnership agreements made with Miller amounted to the sale by Miller to taxpayers of a security and as Miller had no permit under the California Corporate Securities Act, West's Ann.Corporations Code, § 25000 et seq., to make any such sale, a debtor-creditor relationship arose between the petitioning taxpayers and Miller whereby Miller became indebted to them for the sums advanced. Taxpayers' assertion of the creation of a debtor-creditor relationship and their basis for a claimed bad debt loss under the provisions of §

23(k) (4) of the Internal Revenue Code of 1939 rest entirely upon certain provisions of the Corporate Securities law of California. Section 23(k) (4) should be interpreted to the end that its application should be uniform throughout the Nation. For a determination in this case as to whether an indebtedness resulted, within the meaning of § 23(k) (4) of the Internal Revenue Code of 1939, from the transactions between taxpayers and Miller, we must look to the transactions alone without reference to the California Corporate Securities law.

The taxpayers have not suffered a bad debt within the meaning of § 23(k) (4) of the Internal Revenue Code of 1939. Determination of the second question thus becomes unnecessary.

The decisions of the Tax Court as to a deficiency in the petitioners' income tax returns in the sum of $150, respectively, for the year 1949, are, therefore,

Affirmed.