Louis N. POKRESS and Estate of Lucille A. Pokress, Deceased, Louis N. Pokress, Executor, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15608.

United States Court of Appeals
Fifth Circuit.

May 25, 1956.

Rehearing Denied Aug. 28, 1956.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

Wm. G. Ward, Miami, Fla., Ward & Ward, Miami, Fla., for appellants.

Grant W. Wiprud, Atty., Dept. of Justice, Tax Div., Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., John Potts Barnes, Chief Counsel, Int. Rev. Service, Washington, D. C., Vernon F. Weekley, Sp. Atty., Robert N. Anderson, A. F. Prescott, Walter Akerman, Jr., Attys., Dept. of Justice, Washington, D. C., for respondent.

RIVES, Circuit Judge.

The Tax Court held that the petitioner [1] in the taxable year 1946 sustained a non-business bad debt loss in the amount of $16,222.77 deductible under the provisions of Section 23(k) (4) of the 1939 Internal Revenue Code.[2] The petitioner insists that the Tax Court erred: (1) in refusing to find from the overall transaction a deductible loss incurred in trade or business or in a transaction entered into for profit under § 23(e) (1) or (2);[3] (2) in holding the loss deductible under § 23(k), footnote 2, supra, as a non-business rather than a business bad debt; and (3) in its findings of fact as to the amount of the loss.

The pertinent facts are set forth in much detail in the Tax Court's memorandum findings of fact and opinion, and will be recounted here only so far as necessary to an understanding of our holdings. In 1946, and for some twenty years prior thereto, petitioner in Miami, Florida was engaged in business as a broker representing largely a northern clientele in the purchase and sale of busi-

---

1. Louis N. Pokress will be referred to as the taxpayer or the petitioner. His wife, now deceased, was involved solely because of her having filed a joint return with him.

2. "§ 23. *Deductions from gross income.* In computing net income there shall be allowed as deductions:
   *       *       *       *       *
   "(k) *Bad debts.*
   *       *       *       *       *
   "(4) *Non-business debts.* In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term 'non-business debt' means a debt other than a debt evidenced by a security as defined in paragraph (3) and other

than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." 26 U.S.C.A. § 23(k) (4). If correct, the loss was, of course, deductible only as a short term capital loss. See § 117, 26 U.S.C.A. § 117, and see also Edwards v. Allen, 5 Cir., 216 F.2d 794.

3. "§ 23. *Deductions from gross income.* In computing net income there shall be allowed as deductions:
   *       *       *       *       *
   "(e) *Losses by individuals.* In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
   "(1) if incurred in trade or business; or
   "(2) if incurred in any transaction entered into for profit, though not connected with the trade or business;
   *  *  *." 26 U.S.C.A. § 23(e) (1) and (2).

ness and investment properties, including hotels and restaurants.[4] He frequently advanced his own funds in order to secure a particular sale, and would later be reimbursed by his client and also receive his commission on the sale.

A business associate, Louis Goldman, advised the petitioner of a Philadelphia client who was interested in purchasing Pappy's Inc., a Miami Beach restaurant, at a price of $150,000.00 for all of the corporate stock. To secure the sale, petitioner advanced $25,000.00 to Julius Kasdin, owner of all of the stock in Pappy's Inc. A few days later the client advised that he was no longer interested. Kasdin refused to return the $25,000.00 and, rather than forfeit that amount, the petitioner and Goldman consummated the deal with Kasdin, receiving credit for a $15,000.00 commission, and purchasing the stock for $135,000.00, of which $45,000.00 was in cash, and $90,000.00 on time. Petitioner received two-thirds and Goldman one-third of the corporate stock which they then pledged to Kasdin as security for the unpaid $90,000.00 of the purchase price.

Petitioner did not intend to go into the restaurant business any further than was necessary to find a purchaser and thus to recoup his loss. He made various attempts in 1945 and 1946 to sell the stock, but without success. The corporation continued to lose money and it became necessary for petitioner to make personal advances totalling $43,922.86, for which he took from the corporation interest-bearing notes.

In the summer of 1946, the corporation ceased business and was liquidated, the assets being distributed pro-rata to the two stockholders who assumed the liabilities. The principal asset was a lease [5] on the premises occupied by the restaurant in the Vanderbilt Hotel, Miami, which however, was never carried as an asset on the books of the corporation. Financial statements prepared from the books as of the date of liquidation, which were recognized as factually true, disclose that petitioner had suffered a loss in liquidation as follows:

Excess of liabilities assumed
over assets received..... $ 5,633.25
Capital Stock ............ 91,000.00
Loans payable to stock-
holders ............... 43,922.86
Total ........... $140,556.11

These were book entry losses, which did not take into account the value of the lease nor the cash loss already suffered. At the time of the liquidation on July 15, 1946, petitioner had advanced his two-thirds of the original $45,000.00 paid in cash for the stock and had advanced $43,922.86 from time to time, and he was still liable for his pro-rata share of the purchase notes due to Kasdin. On the books of the corporation, the $43,922.86 was listed as a loan to the corporation. On his 1946 income tax return, petitioner claimed a deduction of $43,922.86 as a "Loss resulting from advances to Pappy's, Inc." and claimed also a long term capital loss on "Stock-Pappy's Inc." in the amount of $30,520.15. So far as the loss on the stock of Pappy's Inc. is concerned, there has been no amended return or effective petition for redetermination.

A few months after the liquidation, petitioner worked out an agreement for the leasing of the restaurant premises. By that agreement the existing lease was cancelled, a new 17-year lease was executed by the lessor, Vanderbilt Hotel Corporation, to The Cummings Corporation, a subsidiary of the Howard Johnson chain of restaurants, with a guaranteed minimum rental of $10,000.00 per year plus a percentage of the gross receipts. The rentals were to be paid to a trustee, who in turn was to make annual payments in the following order: (1) to Julius Kasdin in the amount of $8,888.88, representing the installment obligation of petitioner and Goldman for the

---

4. As an example of the nature of petitioner's business, see Pokress v. Southern Hotel Corporation, Fla., 42 So.2d 166.

5. At a fixed rental of $7,000.00 through 1949, and $7,500.00 thereafter until June 1, 1954, the lessee had an option of renewal for an additional ten years.

original stock purchase; (2) to the Vanderbilt Hotel Corporation, as lessor, to the extent of $7,000; and (3) the balance of the payments, if any, to petitioner and Goldman. The trust agreement was to terminate at end of the first eight years of the concurrent lease or at such time as petitioner and Goldman had been paid $71,633.32. Petitioner and Goldman became guarantors for the difference between the guaranteed minimum rental of $10,000.00 and the required payments of $8,888.88 plus interest to Kasdin and $7,000.00 rent.

Operations under that lease proved successful, the total rent paid each year from 1947 to 1951, inclusive, amounting to over $22,000.00, out of which was paid the agreed annual payments of $8,888.88 plus interest to Kasdin, the $7,000.00 basic rent, and a total over the period of $12,165.00 to petitioner.

The Tax Court found that, at the time of liquidation of Pappy's Inc., the lease assigned to petitioners and Goldman had

a fair market value of not less than $50,-000.00.

█ While we are satisfied on the merits that, as to the $43,922.86, petitioner was not entitled to a deduction for a loss incurred in trade or business or in a transaction entered into for profit under § 23(e) (1) or (2), footnote 3, supra, we find it unnecessary to discuss such insistences because in his petition for redetermination in the Tax Court petitioner made no such contention but simply claimed a loss from business loans.[6] That remained petitioner's consistent position throughout until the Tax Court accurately stated the question in its opinion,[7] and rendered its decision against petitioner. Then, on motion for review by the full Tax Court, petitioner for the first time urged that he was entitled to a loss deduction under § 23(e). Exercising its irrevisable discretionary power,[8] the Tax Court denied his motion for review. These issues not having been timely raised in the Tax Court should not

6. In pertinent part, the petition for redetermination read:

"As an explanation of his adjustment disallowing as a business loss, loans made to Pappy's Inc. the Commissioner has shown on Pages 2, item c of Petitioners' Exhibit 'A',

" '(c) It was determined that the advances to Pappy's Inc. were not allowable deductions.'

"For explanation to the Court of this item, the Petitioners contend that the Commissioner apparently did not give credence to all facts pertaining to the loss sustained by them as individuals in respect to loans made to Pappy's Inc.

"Mr. Pokress, and an associate, acting as realty and business brokers, negotiated for the sale of Pappy's Inc. a going and established corporation, to an outside customer. The sale was not completed, and Mr. Pokress and his associate were obliged on December 7, 1944, to make the purchase themselves. Due to facts beyond the stockholders' control, and starting as a temporary measure, the Corporation was forced to negotiate loans for purposes of operations. Expecting repayment with interest, and anticipating locating another customer to purchase the business, the stockholders made cash loans to the Corporation on the basis of interest bearing notes. The loans were

made in the pursuance of ordinary business and in some cases, the monies loaned to the Corporation were borrowed from individuals and/or friends of the Petitioners, who in turn loaned same to Corporation. The Corporation was not a new Corporation at the time of Petitioners' acquisition, and had a considerable operation deficit. These facts would necessitate additional financing in the form of loans whether from a bank or from an individual, and should be recognized, in the Petitioners' opinion, as a business loss.

"Petitioners realized the financial difficulties of the Corporation after acquisition of the capital stock and endeavored to protect the original investment in every way possible. It was a strict business operation and Petitioners contend it should be recognized and construed as such."

7. "The question presented is whether the petitioner sustained a loss in 1946 as a result of advances made to Pappy's, Inc., and whether the loss is deductible as a business or a nonbusiness bad debt."

8. Freeman-Hampton Oil Corp. v. Commissioner, 5 Cir., 65 F.2d 456, 457; Sisto Financial Corp. v. Commissioner, 2 Cir., 149 F.2d 268, 270.

ordinarily be considered upon review by this Court.[9]

■ ▪ Under Section 23(k), we think that the Tax Court correctly held that petitioner's loss was due to the worthlessness of a non-business debt. "The term 'non-business debt' means a debt * * * other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." § 23(k) (4), Internal Revenue Code 1939. "The character of the debt * * * is to be determined * * * by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt is not a non-business debt for the purposes of this section." § 29.23(k)–6 of Treasury Regulation III promulgated under the Internal Revenue Code of 1939.[10] Whether a debt is one the loss from the worthlessness of which is incurred in a taxpayer's trade or business is a question of fact in each particular case.[11]

■ Assuming that the $25,000.00 advance by petitioner to secure the sale of Pappy's Inc. was incurred in his trade or business as a broker, the subsequent purchase of the stock of Pappy's Inc. clearly constituted an investment. The again subsequent loans to cover the operating deficits of Pappy's Inc. were not proximately related to his brokerage business, but were at least two steps removed therefrom.[12] In many situations more favorable for the taxpayer, the courts have found lacking any proximate relation to the trade or business of the taxpayer.[13]

■ The petitioner challenges the Tax Court's finding that, at the time of liquidation of Pappy's Inc., the lease had a fair market value of not less than $50,-000.00. He insists that it had no market value because for over a year and a half before liquidation he had made continuous efforts to sell the stock or to find someone to take over the restaurant and had found no prospective purchaser. In such a situation, fair market value may be ascertained by proof of subsequent events demonstrating the intrinsic worth of the lease.[14] A qualified expert produced by the Commissioner testified:

"Well, on July 25, 1946, in my opinion this lease was worth $50,000. That is after considering all of the elements, every approach that you can apply. * * * Based on all of the contributing factors, including leases on Miami Beach in 1946, I say the fair value of the property is $50,000."

Under such opinion testimony amply supported by the factual evidence, we cannot say that the Tax Court's valuation of the leasehold is clearly erroneous. See Section 7482(a), Internal Revenue Code of 1954, 26 U.S.C.A. § 7482 (a); Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.A.

The decision of the Tax Court is therefore

Affirmed.

9. Burnet v. Commonwealth Imp. Co., 287 U.S. 415, 418, 53 S.Ct. 198, 77 L.Ed. 399; Glassell v. Commissioner, 5 Cir., 42 F.2d 653; Commissioner of Internal Revenue v. Gregory Run Coal Co., 4 Cir., 212 F.2d 52, 59; Inman-Poulsen Lumber Co. v. Commissioner, 9 Cir., 219 F.2d 159, 161–162; 9 Mertens Law of Federal Income Taxation, § 51.31.

10. See also the Report of the Committee on Ways and Means, H.R. No. 2333, 77th Congress, 2nd Sess., pp. 76–78; 5 Mertens Law of Federal Income Taxation, § 30.26.

11. Campbell v. Walker, 5 Cir., 208 F.2d 457.

12. Petitioner was not engaged in the business of dealing in enterprises as was the taxpayer in Giblin v. Commissioner, 5 Cir., 227 F.2d 692.

13. Friedman v. Delaney, 1 Cir., 171 F.2d 269, 271; Putnam v. Commissioner, 8 Cir., 224 F.2d 947; Park v. Commissioner, 22 B.T.A. 1263, affirmed 2 Cir., 58 F.2d 965; Dallmeyer v. Commissioner, 14 T.C. 1282.

14. Doric Apartment Co. v. Commissioner, 6 Cir., 94 F.2d 895, 896, 897.