**UNITED STATES of America,
Defendant, Appellant,**

v.

**Forrester A. CLARK et al., Plaintiffs,
Appellees.**

**No. 6617.**

United States Court of Appeals
First Circuit.

March 14, 1966.

Rehearing Denied April 27, 1966.

Solomon L. Warhaftig, Atty., Dept. of Justice, with whom Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, W. Arthur Garrity, Jr., U. S. Atty., John Paul Sullivan, Asst. U. S. Atty., and Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellant.

Philip M. Cronin, Boston, Mass., with whom Edward C. Park, Boston, Mass., was on brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Plaintiff taxpayer [1] is a senior partner in a well known securities brokerage firm in Boston from which he derives the major part of his income. He claims that also he is individually in the separate business of seeking out, promoting, organizing, financing and managing business ventures and has "quite a number of small businesses." [2] Apparently taxpayer had acquired a reputation for helping small companies. Amongst the business ventures in which the taxpayer became actively interested during the recent past, were two small Massachusetts corporations known as Endure Paint Corporation and Electronic Detection Products Company, both of which eventually became insolvent. Neither of these corporations had any connection with the other. At various times between 1955 and 1959, the taxpayer personally guaranteed the obligations of these two corporations and made a direct loan to one of them.

Basically, this appeal presents the question whether the taxpayer is entitled to deduct as business bad debts, losses sustained by him resulting from these guarantees and this loan. This in turn presents the narrower question of whether these were *business* bad debts within the meaning of Section 166 of the Internal Revenue Code of 1954.[3]

Briefly the facts are these. In 1952 one Eaton, a friend of the taxpayer and

1. His wife was joined as a party plaintiff only because joint returns were filed.

2. Taxpayer testified that over the years he had become actively involved in some forty-five business enterprises.

3. "§ 166. BAD DEBTS.
  (a) *General Rule.*—
  (1) *Wholly worthless debts.*—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.
    \*    \*    \*    \*    \*
  (d) *Nonbusiness Debts.*—
  (1) *General Rule.*—In the case of a taxpayer other than a corporation—
  (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and
  (B) where any nonbusiness debt becomes worthless within the taxable year,

the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.
  (2) [as amended by Sec. 8, Technical Amendments Act of 1958, P.L. 85–866, 72 Stat. 1606] *Nonbusiness debt defined.*—For purposes of paragraph (1), the term 'nonbusiness debt' means a debt other than—
  (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or
  (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.
    \*    \*    \*"

also the president and principal stockholder of Endure Paint Company, which was then a failing business, sought the taxpayer's financial assistance and advice. In the two years that followed the taxpayer advised Eaton with reference to the management of the business and obtained several loans for Endure by endorsing its notes to the bank. When these notes became due and Endure was unable to pay them he either paid the notes himself or loaned Endure the money to pay them. Taxpayer received no interest on these loans. For these efforts the taxpayer from time to time received stock in the company. When received, this stock had no value.

In 1955 Endure again fell into bad times and the taxpayer arranged a settlement with its creditors. A new corporation, Endure Paint Corporation, was formed to take over the business of the old company. The taxpayer financed this new corporation by obtaining two bank loans totalling $25,000 and personally executed the notes. Part of these funds were to be used for working capital for the new corporation. The stock of the new corporation was placed in escrow as security for creditors. It was agreed that when this stock was released the taxpayer would receive about one-third of it. Taxpayer testified this was a reward for his services. At that time the stock had no value but the taxpayer hoped to make it valuable by making the company successful.

In 1956 taxpayer loaned Endure an additional $3,000, making a total of $18,651.58 loaned to or guaranteed by the taxpayer. In October of 1956 Eaton notified the taxpayer that because of a serious illness he could not continue in business. The company was liquidated and as a result the taxpayer incurred the following losses on his loans and guarantees: $7,000 in 1956; $8,000 in 1957 and $5,651.58 in 1958.

Taxpayer became interested in Electronic Detection in 1957 when its officers approached him with the view to obtaining additional capital. He succeeded in raising $100,000 for this company from several friends. For this the taxpayer received an option to purchase stock in the company. When received, this option had no value but the taxpayer hoped the company would become successful and the stock would thereby become valuable. He was chosen a director of this company and later went on its executive committee. For his management services he received additional stock options from the company.

In the fall of 1957 taxpayer guaranteed a substantial loan for the company. Thereafter the company went into the red and in December of 1958 the taxpayer was obliged to pay $30,000 on his guarantee. However, at the same time he signed a second guarantee for approximately $27,000 because he said he wanted to see the company "keep going." At that time he owned about a 30% interest in it. In February of 1959 demand was made on Electronics Detection for repayment of this loan and, the company being insolvent, taxpayer was required to pay $23,000 pursuant to his second guarantee. He received no compensation for making these guarantees.

None of said payments made to or on behalf of either Endure or Electronics Detection were ever recovered by the taxpayer, and he deducted these losses in full as business bad debts on his federal income tax returns. The Commissioner disallowed these deductions. Deficiency assessments followed, which were paid. After denial of claims for refund the taxpayer brought this suit. Both sides claimed a jury trial and the case was submitted to the jury on four special questions.[4]

At the close of the evidence the government moved for a directed verdict on

---

4. Only questions 2, 3 and 4 are material on this appeal. They are as follows:

"2. Was Mr. Clark engaged in the trade or business of seeking out, promoting, organizing, financing and managing business enterprises during the years 1956, 1957, 1958 and 1959?

"3. Was the bad-debt loss sustained in connection with the Endure Paint Corporation sustained in connection with

the ground that the taxpayer's activities, as a matter of law, did not constitute a *business* within the meaning of the bad debt statute. The trial court denied this motion. The jury answered "Yes" to all four questions and returned a verdict for the taxpayer. Thereupon and for the same reasons given in support of its motion for direction of a verdict, the government moved for judgment notwithstanding the verdict which motion was also denied. On appeal, the government contends that the trial court erred in denying its motions.

■■ It is well settled that the burden was on the taxpayer to show that he was entitled to the claimed deductions. White v. United States, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172 (1938); United States v. Byck, 325 F.2d 551 (5th Cir. 1963). In order to prevail here he had to show (1) that he was individually in the *business* of seeking out, promoting, organizing, financing and managing business ventures as claimed; (2) that his activities with regard to Endure and Electronic Detection were a part of that business; and (3) that his said guarantees and loan and the losses resulting therefrom were proximately related to said individual business. United States v. Byck, supra.

■ The leading authority on the basic question involved here is Whipple v. Commissioner, 273 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963), in which the Supreme Court laid down the tests as to what constitutes a business within the meaning of Section 166. In that case the court said at p. 202, 83 S.Ct. at p. 1174: "Devoting one's time and energies to the affairs of a corporation is not of itself, and without more, a trade or business of the person so engaged." In order

to sustain a finding that the taxpayer is engaged in the trade or business of promoting or financing corporations, he must show that his reward or compensation from these corporations is different from that flowing to an investor and that he had an intention of "developing the corporations as going businesses for sale to customers in the ordinary course." Whipple v. Commissioner, supra; Bodzy v. Commissioner, 321 F.2d 331 (5th Cir. 1963). Without this additional evidence, the furnishing of organizational, promotional and managerial services to corporations is not a trade or business within the meaning of the statute.

■■ The legal principles announced in *Whipple* are controlling here. We have searched the record and viewing the evidence in the light most favorable to the taxpayer, we do not find this necessary "additional evidence" as required by *Whipple*. While there is some evidence that the taxpayer may have been engaged in the business of promoting corporations,[5] even if promoting corporations may include rehabilitating old ones there is no evidentiary basis for holding that his activities with regard to Endure and Electronic Detection were part of that business, i. e., that he was promoting these two companies. Nor is there any evidence that the taxpayer intended to develop these corporations "as going businesses for sale to customers in the ordinary course" or that the compensation[6] received by him from either corporation was different from that flowing to an investor. Taxpayer's sole activity in rendering advice and making advances to Endure in and of itself did not amount to a promotion. There is no evidence whatever that taxpayer intended to develop this company for sale to prospec-

Mr. Clark's trade or business of seeking out, promoting, organizing, financing and managing business enterprises?
"4. Was the bad-debt loss sustained in connection with Electronic Detection Products, Inc., sustained in connection with Mr. Clark's trade or business of seeking out, promoting, organizing, financing and managing business enterprises?"

5. The government concedes that over the years the taxpayer can be said to have "promoted" six business enterprises.

6. All he received from Endure was worthless stock and all he received from Electronic Detection were options to purchase stock that at best had only a speculative value.

tive investors. Clearly his status in this company did not rise above the level of an investor.[7]

■ Assuming that taxpayer's raising of $100,000 on behalf of Electronic Detection was a "promotion", the subsequent guarantees of two substantial loans to cover the operating deficits of this failing company were not proximately related to any promotion. Taxpayer was seeking to make the corporation successful in order that the value of his stock options would be enhanced and that the investments of his friends would be protected. According to his own testimony, taxpayer received no compensation for these guarantees. This subjecting of his assets to the risks of the corporation business constituted merely an investment by taxpayer. See Pokress v. Commissioner, 234 F.2d 146, 150 (5th Cir. 1956).

In view of the explicit language of *Whipple* and its similarity to the instant case, we must conclude that the trial court erred in denying the government's motions for a directed verdict and for judgment notwithstanding the verdict on the *business* bad debt issue. However, any verdict or judgment for the government in this case should be limited to this issue since it is clear the taxpayer would be entitled to recover some amount as *nonbusiness* bad debt deductions.

The judgment of the district court is vacated, the verdict is set aside, and the case is remanded to that court for further proceedings consistent herewith.

ON PETITION FOR REHEARING

PER CURIAM.

In his petition for rehearing, taxpayer asserts that the facts of Whipple v. Commissioner of Internal Revenue 1963, 373 U.S. 193, 83 S.Ct. 118, 10 L.Ed.2d 288 make that case clearly distinguishable from the case at bar. If our opinion gave the impression that we thought the facts were on all fours, we do not so

believe. We thought *Whipple* to be controlling because of its clear implication that when a taxpayer's loss-producing activities are at least equally consistent with his being an investor as with his being in the business of promoting, financing or managing the enterprises in question, he has not met his burden. In the case at bar taxpayer's other activities, introduced as background evidence, are not relevant, for they cut neither one way nor the other so far as the particular losses in issue are concerned. We can find no substantial affirmative evidence that these were suffered other than as an investor within the *Whipple* definition.

Petition denied.