**Henry H. TOWNSHEND, Jr. and Doris B. Townshend**

v.

**The UNITED STATES.**

No. 244–62.

United States Court of Claims.
Nov. 9, 1967.

Joseph D. DiSesa, New Haven, Conn., attorney of record, for plaintiffs. Boris I. Bittker and John W. Kline, New Haven, Conn., of counsel.

Edna G. Parker, Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Lloyd Fletcher with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on February 2, 1967. On February 28, 1967, plaintiffs filed a notice of intention to except to the commissioner's report but thereafter, on allowance of additional time for the filing of such exceptions, on September 7, 1967, the parties filed a stipulation to resolve certain administrative matters in regard to years subsequent to this litigation and a joint motion for an additional finding

of fact * and for the adoption of the opinion, findings of fact, and recommended conclusion of law of the trial commissioner. Since the court agrees with the commissioner's opinion, findings, and recommended conclusion of law, as modified by the joint motion of the parties for the addition of finding No. 23, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Plaintiffs are, therefore, not entitled to recover and their petition is dismissed.

## OPINION OF COMMISSIONER **

FLETCHER, Commissioner:

██ ██ As in Whipple v. Commissioner of Internal Revenue, 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963), this income tax case involves the question of whether the taxpayer's activities in connection with several corporations in which he held controlling interests can themselves be characterized as a trade or business so as to permit a debt owed by one of the corporations to him to be treated under Section 166(a) of the 1954 Code as a business rather than a "nonbusiness" bad debt under Section 166(d). *Whipple* and an avalanche of cases before it have established that, unless a taxpayer can prove himself to be engaged in the independent business of loaning money, or financing businesses, or promoting corporate enterprises, any loan made by him to his closely-held corporations, upon worthlessness, will give rise only to a nonbusiness bad debt deduction subject to short-term capital loss limitations. Obviously, then, the question is essentially one of fact and involves an historical analysis of the taxpayer's business activities. See Redman, Bad Debts: Worthlessness, 22 N.Y.U.Inst. on Fed.Tax., 315, 323 (1964).

The taxpayer [1] commenced his business career shortly after his release from the Army in December 1945. Almost immediately he obtained a job with the Marlin Firearms Co. as its production control manager and later was promoted to plant manager, a position he continued to hold until June of 1952.

By reason of an inheritance, Mr. Townshend was a man of considerable wealth. Commencing in 1947, he embarked upon a series of efforts to increase his wealth through buying into, or forming, small corporations for the purpose of exploiting various lines of products, some new and some old. The factual details of these transactions are set forth in the findings below and will not be repeated here. Suffice it to say that his *modus operandi* was essentially the same in all these activities and may be described thusly.

Typically, plaintiff would be approached by friends, relatives, or business acquaintances and asked to examine various products as to their sales potential or to put money into an existing business venture. Frequently, nothing came of these approaches. On the other hand, in several instances plaintiff was attracted by a proposal to the extent that he would invest money in it. For example, in one of his first ventures, plaintiff was approached by two men who had a patent on a doorstop device but no money with which to exploit it. Plaintiff and the patentees formed a corporation under the name of Items, Inc. to which the patentees contributed their patent and plaintiff contributed $5,000 for which he received 52 percent of the stock. The venture was a failure.

The corporation out of which the bad debts here involved arose was Toy Metal Manufacturing Company (Toy Metal).

---

* See finding No. 23 pertaining to an undisputed fact which neither party requested the commissioner to find but which both parties have requested the court to find by the joint motion filed September 7, 1967.

** The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

1. The term refers to Henry H. Townshend, Jr. His wife, Doris B. Townshend, is a party hereto solely because she filed joint income tax returns with her husband for the taxable years here involved.

In early 1949, plaintiff and several other businessmen formed this corporation to engage in the manufacture of toys. Each man contributed $7,500 for which they received an equal amount of stock in the corporation. Although initially successful, the company began to experience collection difficulties, and its financial condition deteriorated. In an effort to salvage his original investment, plaintiff agreed to assume the debts of the corporation in exchange for the surrender of their stock by the other stockholders, and thereafter he became the sole stockholder.

Toy Metal abandoned the toy business and obtained subcontracts to make fuse parts needed for the Korean War effort. For a couple of years the company prospered, but near the middle of 1952 it entered into a large subcontract for the manufacture of component parts of a shovel. This was the largest venture Toy Metal had ever undertaken, and it was to prove its undoing.

Realizing that Toy Metal needed considerable financing to perform this subcontract and that it could not obtain any substantial credit on its own, plaintiff arranged for Toy Metal to borrow substantial sums from The Union & New Haven Trust Company in which plaintiff owned considerable stock and with which he maintained a large custody account. The loans so obtained by Toy Metal from the Trust Company were evidenced by promissory notes, the payment of which was personally guaranteed by plaintiff.

The prime contractor on the shovel contract experienced severe financial difficulties, and eventually the Government terminated the contract for default.[2] The prime contractor's difficulties reflected themselves in corresponding difficulties to Toy Metal. The end result was that plaintiff had to pay The Union & New Haven Trust Company on the Toy Metal notes which he had guaranteed. He paid a total of such notes in 1955 amounting to $50,000, a total of $100,000 in 1956, and the remaining balance of $60,000 in 1957. These are the payments which plaintiff claimed as business bad debt deductions in the respective years of payment.

Section 166 of the 1954 Code is the applicable provision. As is so often true in the Code, the section begins by stating a general rule and then places a limitation upon it. The general rule is that there "shall be allowed as a deduction any debt which becomes worthless within the taxable year." Sec. 166(a). But Section 166(d) provides a limitation that "nonbusiness" debts owed to taxpayers other than corporations are deductible only when they become wholly worthless and then only as short-term capital losses. The section goes on to define a nonbusiness debt as any debt other than—

(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or

(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

■ Obviously, one effect of this definition is to define, by indirection, the business debt, so that if a debt cannot meet one or the other of these two tests, it cannot qualify as a business debt but necessarily must be a nonbusiness debt. The crucial words of the definition are "trade or business." Thus, if he is to obtain a business bad debt deduction, a taxpayer must show that he had a business with which the bad debt was connected. See Knickerbocker, Bad Debts, 23 N.Y.U.Inst. on Fed.Tax., 113, 118 (1965).

Plaintiff contends that he was in the business of promoting, organizing, financing, and developing small businesses. He says that because he was primarily interested in developing and disposing of business enterprises, he was a "promoter of the classic type," and that, therefore, the losses incurred when he discharged his liability to The Union

---

2. This contract was the subject matter of Harvey-Whipple, Inc. v. United States, 342 F.2d 48, 169 Ct.Cl. 689 (1965).

In the court's decision there, Toy Metal is referred to by its trade name of "Meriden Industries."

& New Haven Trust Co. as guarantor of Toy Metal's notes were a direct result of his business of promoter.

Plaintiff has shown that for the period covered by his testimony (1945–1965) he had investigated numerous business possibilities and that he had organized at least five corporations either alone or in participation with others. In each instance he received stock in exchange for the money which he contributed to the capital of the new corporation. Being thus instrumental in the organizing of a number of corporations, there is little doubt that plaintiff can properly be classed as a "promoter" in the corporate or securities law sense of that term.[3]

However, in order for such a promoter to be engaged in a trade or business for tax purposes, Whipple v. Commissioner of Internal Revenue, supra, requires that he must undertake such activity for compensation other than the normal investor's return. In determining the business status of a taxpayer who was even more active in corporate organization than plaintiff here, the Supreme Court said at 373 U.S. 202–203, 83 S.Ct. 1174:

If full-time service to one corporation does not alone amount to a trade or business, which it does not, it is difficult to understand how the same service to many corporations would suffice. To be sure, the presence of more than one corporation might lend support to a finding that the taxpayer was engaged in a regular course of promoting corporations for a fee or commission, see Ballantine, Corporations (rev. ed. 1946), 102, or for a profit on their sale, see Giblin v. Commissioner, 227 F.2d 692 (C.A. 5th Cir.), but in such cases there is compensation other than the normal investor's return, income received directly for his own services rather than indirectly through the corporate enterprise, and the principles of *Burnet, Dalton, du Pont* and *Higgins* are therefore not offended.

■ By this statement it is clear that the Supreme Court, in determining the taxpayer's business status, places great emphasis on the nature of the income which he receives, or expects to receive, from his activities. If he promotes corporate enterprises for fees and commissions or with a view to an early and profitable sale thereof after the business has become established, then the expected income would be "received directly for his own services rather than indirectly through the corporate enterprise," and he may properly be said to have a business of his own separate and apart from the businesses of the corporations.

The difficulty with plaintiff's case is that he can meet none of the Supreme Court's criteria. There can be no dispute that he received no fees and commissions for his promotional activities. To be sure, he received shares of stock in the several corporations, but, again, there is no suggestion that such stock was received for promotional services. Rather,

---

3. For example, the Securities and Exchange Commission, in Rule 405 under the Securities Act of 1933, 15 U.S.C. §§ 77a et seq., has defined promoter as follows:

Promoter. The term "promoter" includes: (1) Any person who, acting alone or in conjunction with one or more other persons, directly or indirectly takes initiative in founding and organizing the business or enterprise of an issuer;

(2) Any person who, in connection with the founding and organizing of the business or enterprise of an issuer, directly or indirectly receives in consideration of services or property, or both services and property, 10 percent or more of any class of securities of the issuer or 10 percent or more of the proceeds from the sale of any class of securities. However, a person who receives such securities or proceeds either solely as underwriting commissions or solely in consideration of property shall not be deemed a promoter within the meaning of this paragraph if such person does not otherwise take part in founding and organizing the enterprise. 17 C.F.R. 230.405(q).

the stock was received for money paid by plaintiff to the issuing corporation.[4]

It is true that, following its statement quoted above, the Supreme Court went on to note that Whipple had "no intention * * * of developing the corporations as going businesses for sale to customers in the ordinary course * *" It is that fact, says plaintiff, which constitutes a critical distinction between his case and *Whipple*. He asserts that, unlike Mr. Whipple, he always entertained the intention to develop his several corporations as going businesses for sale to others. However, whatever plaintiff's subjective intention may have been, the objective facts of record fall far short of establishing his assertion.

During the entire twenty years covered by his testimony, plaintiff never once sold any corporation in which he had an interest, nor, indeed, does the record show that he ever made any particular effort to sell any of his corporations *as such*. What he did do on several occasions was to cause his corporations to sell part of their assets in the form of product lines. For example, the J. T. Henry Manufacturing Corporation had developed, in addition to its line of hand garden tools, an entire line of power tools. Plaintiff and his co-stockholder caused the corporation to sell the power tool line to another unrelated company, the purchase price and royalty payments being made to J. T. Henry Manufacturing Corporation and not to its stockholders.

In pointing to this transaction as a typical instance of *his* engagement in the business of selling product lines, plaintiff betrays a common lay misconception, i. e., that of the major stockholder in a closely held corporation confusing the corporate business with his own. It was not plaintiff who sold the power tool line. It was the J. T. Henry Manufacturing Corporation.[5] Thus, if anyone can be said to be engaged in the business of selling product lines, it was the corporation which was so engaged, not plaintiff. And the business of a corporation is not the business of its stockholders or officers. Whipple v. Commissioner of Internal Revenue, supra; Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397 (1932).

All the objective evidence of record, including large portions of plaintiff's own testimony,[6] points unerringly to the ultimate conclusion that plaintiff's many activities were those "peculiar to an investor concerned with, and participating in, the conduct of the corporate business." Whipple v. Commissioner of Internal Revenue, supra, at p. 202, 83 S.Ct. at p. 1174. He has failed to establish that he was engaged in some separate "trade or business" of his own.[7] Ac-

---

4. Plaintiff makes no contention that he was in the business of lending money to corporations. Cf. Ferguson v. Commissioner of Internal Revenue, 253 F.2d 403 (4th Cir., 1958). Nor is there any evidence to suggest that plaintiff may have guaranteed Toy Metal's notes for the purpose of protecting his relatively small salary as an officer of Toy Metal. Cf. Trent v. Commissioner of Internal Revenue, 291 F.2d 669 (2nd Cir., 1961).

5. As principal executive officer of the corporation, plaintiff no doubt was active in negotiating the sale on behalf of the company. It appears to be fairly easy for the layman to overlook the fact that such business activities are carried on in an agency capacity only. In thus serving his corporation, a taxpayer does not create a "trade or business" of his own. Whipple v. Commissioner of Internal Revenue, supra.

6. It will perhaps suffice to mention one typical example. When asked to state the objective of his efforts to sell the J. T. Henry power tool line, Mr. Townshend candidly replied: "My objective here was to create a profit in the corporations so that we would come out with more money than we put in."

7. Cf. Giblin v. Commissioner of Internal Revenue, 227 F.2d 692 (5th Cir., 1955) where "on the undisputed facts" (p. 698) the court concluded that the taxpayer was a dealer in enterprises. See the comment on this case in Knickerbocker, Bad Debts, supra, at pp. 123–124.

cordingly, the *Whipple* decision instructs us that the debts in question must be classified as nonbusiness debts. To the same effect, see the recent applications of the *Whipple* doctrine in United States v. Clark, 358 F.2d 892 (1st Cir., 1966), cert. denied, 385 U.S. 817, 87 S.Ct. 38, 17 L. Ed.2d 56 (1966), and Millsap v. Commissioner, 46 T.C. 751 (1966).

For all of the above reasons, plaintiffs' petition should be dismissed.