ESTATE OF LOUIS DURANTE, DECEASED, JOHN L. DURANTE, EXECUTOR, AND ANGELA DURANTE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Durante v. Commissioner
Docket No. 2145-86.[1]
United States Tax Court
T.C. Memo 1988-60; 1988 Tax Ct. Memo LEXIS 60; 55 T.C.M. (CCH) 123; T.C.M. (RIA) 88060; February 22, 1988. S. Mac Gutman, for the petitioners. Jody Tancer, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for tax years 1981 and 1982 in the amounts of $ 35,797.00 and $ 19,101.00, *61 respectively. The issue is whether petitioners are entitled to deduct as business bad debts certain amounts paid by Louis Durante during his lifetime as the guarantor of a corporate loan. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits associated therewith are incorporated herein by reference. Prior to his death in 1984, Louis Durante ("Mr. Durante") and petitioner Angela Durante were husband and wife. They filed joint income tax returns for 1981 and 1982. At the time their petition in this case was filed, Angela Durante and John L. Durante, who had qualified as Executor of the Estate of Louis Durante, resided in New York. From about 1950 until his death in 1984, Mr. Durante was involved with several partnerships and corporations in the construction industry. During the 1960s and early 1970s, he was a shareholder, officer, and employee of Durante Brothers, a corporation engaged in excavating, paving, and residential and commercial building. His responsibilities with Durante Brothers included sales and the general promotion of their construction projects. In the course of his activities with Durante Brothers, *62 he was required to execute performance bonds guaranteeing the work of the corporation and the payment of its subcontractors. In or about 1964, Mr. Durante became a shareholder, officer, and employee of Jet Asphalt Corporation ("Jet"), a manufacturer of asphalt. His responsibilities with Jet were limited to sales. He was not involved with the daily management of the company. For his services, he was paid both wages and consulting fees by Jet. After going with Jet, Mr. Durante, continued to provide services to Durante Brothers until that corporation ceased to exist in the early 1970s. The operation of the corporations were entirely separate except that on occasion Durante Brothers would purchase asphalt from Jet. After Durante Brothers' operations ceased, Mr. Durante concentrated his efforts in promoting the business and goodwill of Jet. For such services, Jet paid him wages and other compensation totaling $ 52,094.00 in 1975, $ 51,500.00 in 1976, $ 80,000.00 in 1977, $ 25,700.00 in 1978, $ 127,200.00 in 1979, $ 179,350.00 in 1981, and $ 76,011.00 in 1982. While working for Durante Brothers and Jet, Mr. Durante obtained an interest in other construction ventures. For example, *63 in the early 1960s, he was a partner in Bella Homes, which was engaged in residential construction and sales; and, in the early 1970s, he had an interest in Galante Realty Company, which constructed and managed real properties. He also participated to some extent in the businesses known as Carat Contracting Company and Salvmonte Construction Corporation. However, none of the ventures except Durante Brothers and Jet existed for an extended period, and while Mr. Durante was involved in the promotion and business affairs of the short-lived ventures, the record contains no evidence of the compensation, if any, he received for such services. In the latter part of 1974 Mr. Durante met with Murray Marcovitz, (Marcovitz) the president and owner of 50 percent of the stock in Jerder Realty Services Co. ("Jerder). The other 50 percent of the stock in Jerder was owned by Ben Restelli and his wife, June Restelli. Originally, Jerder had been organized for the purpose of purchasing for resale a development in Staten Island, New York. The development consisted of approximately 100 townhouses in various stages of construction. As president of Jerder, Murray Marcovitz had been responsible for *64 coordinating the construction, promotion and sale of the townhouses. In 1974 when Mr. Durante first met with Marcovitz, the construction and sale of the 100 original townhouses had been completed. Jerder, however, was in the process of negotiating the purchase of an additional 20 townhouses that had been used as models. The models were structurally complete with the exception of water and sewer lines, electrical facilities, and paving. The total price of the 20 models as negotiated by Marcovitz was $ 600,000. At the time, however, Jerder did not have and could not obtain financing for such funds but subsequently, in June of 1975, financing for the purchase was arrange by Marcovitz with the help of Mr. Durante and the $ 600,000 was borrowed from Mortgagee Affiliates Corporation in exchange for a mortgage note in that amount executed by Marcovitz for Jerder and personally guaranteed in a separate document by Mr. Durante. The parties agree that Mortgage Affiliates Corporation would not have made the $ 600,000 loan to Jerder without the personal guarantee by Mr. Durante or a similar guarantee by some other person with an adequate financial statement. Mr. Durante executed the *65 guarantee solely for the purpose of acquiring Marcovitz's 50 percent interest in Jerder. Apart from the execution of the guarantee, he contributed no money or other property for the acquisition of his interest in Jerder and the record contains no evidence that he rendered any service to Jerder except the execution of the guarantee. Prior to 1980, Jerder defaulted on the $ 600,000 mortgage note and Mr. Durante was called upon to make payment under the guarantee. In January of 1981, Mortgage Affiliates Corporation and Mr. Durante reached a settlement agreement regarding the payment of the debt. Under the settlement, Mr. Durante, as guarantor of the note, paid $ 58,000 in 1981 and $ 40,000 in 1982 to Mortgage Affiliates Corporation. Prior to 1964 Mr. Durante's primary source of income was from Durante Brothers. Thereafter and particularly during the years 1975 through 1982 his primary source of income was from wages and other compensation paid by Jet. He received no salary, wages, consulting fees or other income from Jerder. On their 1981 and 1982 tax returns Mr. and Mrs. Durante deducted the amounts paid by Mr. Durante under the guarantee agreement as business bad debts. *66 [2] In his notice of deficiency respondent disallowed the business bad debt deductions and treated the payments as short term capital losses subject to the limitations of section 1211. [3]
OPINION In this proceeding respondent contends that Mr. Durante's debt constituted a nonbusiness bad debt under section 166(d), or alternatively, the debt constituted a capital investment. Petitioners contend that the payments made by Mr. Durante in 1981 and 1982 to discharge his guarantee of the Jerder Realty debt are fully deductible as business bad debts under section 166(a)(1). Generally, losses sustained by a guarantor on a worthless debt are deductible under section 166. Putnam v. Commissioner,352 U.S. 82 (1956); Horne v. Commissioner,59 T.C. 319 (1972), *67 affd. 523 F.2d 1363 (9th Cir. 1975), cert. denied 439 U.S. 892 (1978). When an individual guarantees a debt in the course of his trade or business any subsequent payment as a result of the guarantee is fully deductible under section 166(a)(1) as a business bad debt. However, a payment by an individual taxpayer as guarantor of a corporate debt in a transaction for profit, but not incurred in the taxpayer's trade or business, is deductible as a nonbusiness bad debt under section 166(d) which restricts nonbusiness bad debts to the treatment accorded losses on the sale of short-term capital assets under section 1211. Whipple v. Commissioner,373 U.S. 193, 200-201 (1963). Under section 166(a)(1) the full deductibility of a bad debt turns upon the proximate connection of the debt with activities recognized as a trade or business, a concept which falls short of reaching every income or profit making activity. Whipple v. Commissioner, supra at 201; Putnam v. Commissioner, supra at 90-92. Thus, to be entitled to a business bad debt deduction under section 166(a)(1) it must be shown that the taxpayer was engaged *68 in a trade or business and that the bad debt was proximately related to it. Section 1.166-5(b), Income Tax Regs; Whipple v. Commissioner, supra.In determining whether the loss of a taxpayer is proximate to his trade or business, rather than his investment interest as a shareholder, business considerations must be the dominant motive for making the loan. United States v. Generes,405 U.S. 93, 103 (1972). The burden of proof is on petitioners to show that they are entitled to a business bad debt deduction. United States v. Clark,358 F.2d 892, 895 (1st Cir. 1966); United States v. Byck,325 F.2d 551 (5th Cir. 1963). Their burden includes proof of the existence of the business in which Mr. Durante was engaged and the manner in which the disputed debt was proximately related to such business. Syer v. United States,380 F.2d 1009, 1010 (4th Cir. 1967). In their petition, petitioners allege that Mr. Durante was engaged in the business of rendering advice on the technical and financial aspects of construction contracting. At trial, petitioners' recharacterized his business as promoting, financing *69 and managing real estate and construction enterprises. As proof that Mr. Durante was in a trade or business, petitioners called as a witness Ben Castiglione who testified about his participation with Mr. Durante in a number of construction ventures. From Mr. Castiglione's testimony, we are satisfied that in 1975 through 1982 Mr. Durante was in the trade or business of rendering advice to and promoting the business interests of Jet for wages or other compensation. However, the record before us is not sufficient to support a finding that his trade or business during those years embraced the promotion of any other venture including Jerder in which he held an interest. The Code does not contain an all-embracing definition of the term "trade or business." It is clear, however, that not every income-producing activity constitutes a trade or business. Commissioner v. Groetzinger,480 U.S.    , 107 S.Ct. 980, 987 (1987); Whipple v. Commissioner, supra.
In Whipple v. Commissioner, supra at 202, the Supreme Court addressed what constitutes a trade or business within the meaning of section 23(k)(1) of the Internal Revenue Code *70 of 1939, the predecessor to section 166. The Court stated: Devoting one's time and energies to the affairs of a corporation is not of itself, and without more, a trade or business of the person so engaged. Though such activities may produce income, profit or gain in the form of dividends or enhancement in the value of an investment, this return is distinctive to the process of investing and is generated by the successful operation of the corporation's business as distinguished from the trade or business of the taxpayer himself. When the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business and the return to the taxpayer, though substantially the product of his services, legally arises not from his own trade or business but from that of the corporation. * * * In Whipple the Court went on to stress that "absent substantial additional evidence" the promotion of a corporation for a return no different than that flowing to an investor is not a trade or business. Furthermore, to be engaged in a trade or business, as distinguished from a transaction entered into for profit, the taxpayer must *71 be prepared to show not only that his primary purpose for engaging in the activity was to realize income or profit, but also to show that he was involved in the activity with continuity and regularity. See Commissioner v. Groetzinger, supra.
From this record, we are able to find that the only activities conducted by Mr. Durante with any continuity and regularity were those pertaining to Jet. [4] With the exception of his execution of the guarantee [5] whatever activities, if any, he may have performed in behalf of Jerder are purely a matter of conjecture. Even if we assume that Mr. Durante performed significant promotion or other activities for Jerder, our result would remain unchanged in the absence of a basis for finding that his anticipated reward was compensation directly for his own services as distinguished from receiving an investor's return generated by the successful and profitable operation of the corporation. *72 Mr. Durante's historic participation in other construction ventures does not supply the "substantial additional evidence" needed to support a finding that with respect to Jerder he was a participant in a trade or business rather than an investor. His involvement with each venture was short-lived and sporadic. See Estate of Campbell v. Commissioner,343 F.2d 462, 463 (2d Cir. 1965), affg. a Memorandum Opinion of this Court. Furthermore, the record contains no evidence of the nature and amount of his activity with respect to the ventures. We conclude, therefore, that Mr. Durante's guarantee of the Jerder loan was not incurred by him in the course of any trade or business but in order to acquire 50 percent of Jerder's stock as an investor. [6] See United States v. Generes,405 U.S. 93, 99 (1972); Estate of Broadhead v. Commissioner,391 F.2d 841, 845 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. Decision will be entered for the respondent.
Footnotes
1. The parties have agreed to be bound by the result in this case in the separate but related case at docket No. 2146-86. ↩
2. Neither tax return contains a Schedule C, Income (or Loss) from a Trade or Business. The deductions for business bad debts in 1981 and 1982 appear on the Forms 1040 on the lines ordinarily reserved for reporting "other income." ↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
4. Petitioners did not contend or produce evidence to show the guarantee was incurred for the purpose of generating income or sales commissions in connection with Mr. Durante's services for Jet. See Whipple v. Commissioner,373 U.S. 193, 201 (1963); Dorminey v. Commissioner,26 T.C. 940↩ (1956) (losses on loans to corporation were proximately related to taxpayer's independent produce business where corporations provided a produce resource). 5. Petitioners have stipulated that he executed the guarantee in exchange for 50 percent of the stock of Jerder, which standing alone is the obvious act of an investor. ↩
6. In light of this result, we do not address respondent's alternative argument. ↩