## CAMPBELL v. WALKER.
### No. 14439.

United States Court of Appeals
Fifth Circuit.

Dec. 9, 1953.

Rehearing Denied Jan. 7, 1954.

Melva M. Graney, Sp. Asst. to Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Robert N. Anderson, Walter H. Beaman, Jr., Sp. Assts. to Atty. Gen., Frank B. Potter, U. S. Atty., Tom M. Shaw, Asst. U. S. Atty., Dallas, Tex., for appellant.

Benjamin L. Bird, Ft. Worth, Tex., Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal involves federal income taxes for the year 1948 in the principal amount of $21,959.67, and is taken from a judgment in favor of the taxpayer entered on September 29, 1952. Arising on undisputed facts [1] in the sense that no witness contradicted the testimony of an-

---

1. The taxpayer, a lady about 75 years old, is the widow of Breckenridge S. Walker, who died on January 16, 1929. Prior to his death Mr. Walker made many loans, maintaining an office with an office manager, Miss Snead, and a secretary and bookkeeper. Upon his

death, taxpayer received, as residuary legatee, the Thompson note, hereafter referred to as a part of the residue of Walker's estate.

From 1929 to 1948, and on down to time of the trial in 1952, taxpayer maintained an office with Miss Snead, the same office manager, in charge, a secretary and a bookkeeper, and, in addition, employed attorneys, all to handle her loans.

Among the assets which taxpayer inherited were two notes given to Walker in the course of his business, one of which forms the basis of this controversy.

Taxpayer is an elderly lady who took no personal part in the management of her affairs, knows nothing about the de-

other, indeed, only plaintiff offered witnesses, one question is presented. This is whether the district court erred in finding and holding that taxpayer was in the loan business in 1948, and that a loss founded on the worthlessness in part of a note which taxpayer charged off during that year was deductible, not as a non-business debt under Section 23(k)(4) I.R.C.,[2] but as a business bad debt

tails of this case, and did not testify in the case.

The first of these debts arose in 1926, when Mr. Walker lent $75,000 to Mr. Ernest O. Thompson. This loan was evidenced by a promissory note dated June 14, 1926, payable to Mr. Walker two years from date. It was secured by shares of stock, and, until 1933, by a policy of insurance also.

The second of these debts arose during 1928, when Mr. Walker lent $113,750 to the Amarillo Hotel Company. This loan was evidenced by three promissory notes and was secured by a deed of trust on the hotel properties.

Except for a payment of interest in 1926 on the Thompson note, there were no payments on either debt until the year 1948. The Thompson note was kept alive by appropriate extension agreements. When in 1937 the Amarillo Hotel Company passed through a reorganization, the three notes, totalling $113,750, were replaced by a single note signed by the new corporation, Amarillo Hotel, Inc., and the security was changed, but the amount of the obligation was unaltered.

During the year 1948, the taxpayer sold the $113,750 note for $36,000 and settled the $75,000 note for $9000. On her 1948 income tax return, she reported the sale of the $113,750 note as resulting in a capital loss. She used this capital loss to offset a smaller amount of capital gain, and claimed a $1000 deduction from gross income for the excess.

On the same return she reported the settlement of the $75,000 note as resulting in an ordinary loss rather than a capital loss, and claimed a full deduction from gross income in the amount of the loss.

The Commissioner of Internal Revenue disallowed both deductions and assessed a deficiency of $20,115.53, which was paid with interest on Dec. 27, 1950. Taxpayer filed a claim for refund, and, when the claim was rejected, brought the present action.

The complaint alleged, in substance, that the Commissioner disallowed the losses on the ground that the two notes became worthless in years prior to 1948, and that this determination of the commissioner was erroneous. The complaint further alleged that while the loss on the sale of the Amarillo Hotel note was a capital loss, the loss on the Thompson note was an ordinary loss because it was incurred in trade or business, or was occasioned by the worthlessness of a business bad debt.

The lower court held for the taxpayer on both issues. The government does not contest its first finding, that the loss on the Amarillo Hotel note was a capital loss, but appeals the second with respect to the Thompson note as being clearly erroneous.

Taxpayer's 1948 return lists income in the amounts and from sources following:

| | |
|---|---|
| Oil and gas | $41,629.68 |
| Rentals | 24,251.52 |
| Bond interest | 17,145.95 |
| Dividends | 13,987.00 |
| Oil payment | 2,465.58 |
| Interest on tax refund | 771.16 |
| Interest on notes | 665.13 |
| Sale of land | 256.08 |

Prior to the sale of the Amarillo Hotel note in 1948, taxpayer had never sold any notes, nor had she included any in an inventory and she did not hold the two notes in controversy as part of her stock in trade during 1948.

Miss Snead, over the objection of the government, testified: that B. S. Walker was in the loan business prior to his death; that his estate continued in that business afterwards until Dec. 31, 1934; that from the time of Mr. Walker's death, as well as the time his estate was closed, through 1948, and to the time of the trial, Alice Walker, plaintiff taxpayer, was in the loan business; that from 1940 until 1945, no loans were made and that none were made in 1948; and that Mrs. Walker made few loans in number because their loans were very large, in two and three hundred thousand denominations; "You don't make one every few days". The sum total of her testimony is that no loans were made from 1940 through 1948, and the schedule, which plaintiff offered but which was excluded, showed a steady decrease in the amounts outstanding from 1939 on.

2. Section 23, I.R.C. "(k) Bad debts. * * *
"(4) Non-Business Debts. In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the

under Section 23(k) (1).[3]

The appellant is here urging upon us: that the statements of the secretary, that Mr. Walker, in his lifetime, and Mrs. Walker, after his death, were in the loan business, within the meaning of Sections 23(e) and 23(k) (1) and (4), were mere conclusions; that under those sections and the Treasury Regulation,[4] it is quite clear that taxpayer was not in the loan business but merely was investing her funds; and that the debt for which the loss is claimed is not "a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business".

Insisting that the evidence as a whole presents merely the situation of a taxpayer engaged in making investments and looking after them within the rule of Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783, and Thomas v. Obenchain, 5 Cir., 185 F.2d 455, the collector urges upon us (1) that the taxpayer was never in the loan business, and (2) that, if she was, it is clear that in 1948 she was not engaged in that business, having passed out of it many years before.

The taxpayer, pointing to Miss Snead's flat statement uncontradicted by anyone, that Mr. Walker was, and Mrs. Walker continued to be, in the loan business, and to the court's finding that she was in such business, insists that upon this record that finding cannot be held to be clearly erroneous and must be sustained.

In the alternative, taxpayer, quoting from the report of the Ways and Means Committee,[5] and declaring: "The major

---

taxable year, of a capital asset held for not more than 6 months. The term 'nonbusiness debt' means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

3. Section 23, I.R.C. "(k) Bad debts. "(1) General rule. Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection."

4. " * * * A non-business debt is a debt, other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business and other than a debt evidenced by a security as that term is defined in section 23(k) (3). The question whether a debt is one the loss from the worthlessness of which is incurred in the taxpayer's trade or busi-

ness is a question of fact in each particular case. The determination of this question is substantially the same as that which is made for the purpose of ascertaining whether a loss from the type of transaction covered by section 23(e) is 'incurred in trade or business' under paragraph 1 of that section.

"The character of the debt for this purpose is not controlled by the circumstances attending its creation or its subsequent acquisition by the taxpayer or by the use to which the borrowed funds are put by the recipient, but is to be determined rather by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt is not a non-business debt for purpose of this section." Sec. 23.23(k)-6 (As amended by T.D.5458, 1945 Cum.Bull. 45).

5. "3. Treatment of Bad Debts.
    *       *       *       *       *
"(C) Nonbusiness Bad Debts. The present law gives the same tax treatment to bad debts incurred in non-business transactions as it allows to business bad debts. An example of a nonbusiness bad debt would be an unrepaid loan to a friend or relative, while business bad debts arise in the course of the taxpayer's trade or business. This liberal allowance for non-business bad debts has suffered considerable abuse through tax-

purpose of I.R.C. § 23(k) (4), as the Congressional Committee Report indicates, was to control losses from loans to friends, relatives, and business associates", insists that under the facts of this case, it must be held that she was in the loan business and that the loss for which she makes claim was sustained in the course of the liquidation of that business.

The fundamental difficulty with this reliance by the taxpayer on the committee report is that, while the part of the report of the committee on which she relies does lend support to her argument that what the congress was endeavoring by the section to do was to make a distinction between friendly and business loans, the language of the statute does not give effect to this view. On the contrary it gives full effect to the Senate Finance Committee Report,[6] and the Treasury Regulation quoted above in note 4, adopts the very language of that part of the report.

In addition, taxpayer urges upon us that congress, dissatisfied with the inequity visited, by the ruling in the Higgins case, on investors, intended in the 1942 Act to remove it not only by amending Section 23(e) (2) to provide that losses by individuals should be allowed as deductions "if incurred in any transaction entered into for profit, though not connected with the trade or business", but also by granting to individuals situ-

ated as Higgins was the right to deduct bad debt losses incurred in connection with their investments. So urging, it argues that, whether taxpayer was in the loan business or merely handling her investments, the loss was not a nonbusiness but a business loss.

We cannot agree. The same arguments were pressed upon this court in the Obenchain case, supra, and upon facts differing in detail but not in substance from those in this case, we declined to follow this view. The same judge who tried this case below had decided that case in favor of the taxpayer, and we reversed his findings as without substantial support in the evidence. Here, while the judge does state in his findings that Mr. Walker was engaged in the loan business and plaintiff continued that business through the same office manager and bookkeeper, it is quite plain from the record that the judge was not intending to find that the loss was "incurred in trade or business" in the sense in which those words are used in Section 23(e) (1), but that she was engaged in the business of making personal loans, using the term "business" in the broad sense in which it was used in Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, of investing her money in them. The finding and conclusion, therefore, on which his judgment was based was not an erroneous finding of fact so much as it was an erroneous conclusion of law as to the meaning and

---

payers making loans which they do not expect to be repaid. This practice is particularly prevalent in the case of loans to persons with respect to whom the taxpayer is not entitled to a credit for dependents. The situation has presented serious administrative difficulties because of the requirement of proof.

"The bill treats the loss from nonbusiness bad debts as a short-term capital loss. The effect of this provision is to take the loss fully into account, but to allow it to be used only to reduce capital gains. Like any other capital loss, however, the amount of such bad debt losses may be taken to the extent of $1000 against ordinary income and the 5 year carry-over provision applies."

(House of Representatives Report No. 2333, 77th Congress, First Session; 1942–2 C.B. page 372 at 408).

6. In this connection, the committee stated: " * * * The question whether a debt is one, the loss from the worthlessness of which is incurred in the taxpayer's trade or business, is a question of fact in each particular case, and the determination is substantially the same as that which is made for the purpose of ascertaining whether a loss from the type of transaction covered by section 23(e) is 'incurred in trade or business' under paragraph (1) of that section" (Committee Reports, Rev.Act of 1942 S.R.No.1631, 77th Congress, 2nd Sess. 1942–2 Cum.Bull. p. 573.)

effect of the applicable code provisions, Sections 23(k) (1) and 23(k) (4).[7]

But if this is not so, and the district judge intended to find that the taxpayer was engaged in a business in the sense of Section 23(e) (1), we think it quite plain that his findings are without evidentiary support. For nothing more appears here than appeared in the Obenchain case, a bad debt loss occurring in the course of handling the taxpayer's personal investments. Among the many other cases supporting this conclusion may be cited Commissioner of Internal Revenue v. Stokes Estate, 3 Cir., 200 F.2d 637, and Commissioner of Internal Revenue v. Smith, 2 Cir., 203 F.2d 310.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

---

7. Cf. Commissioner of Internal Revenue v. Smith, 2 Cir., 203 F.2d 310, 311.