**In re Andrew J. HEALEY, Debtor.**

**Andrew J. Healey, Movant,**

**v.**

**United States of America, Respondent.**

**Bankruptcy No. 96–80459.**

United States Bankruptcy Court,
N.D. Georgia.,
Atlanta Division.

Oct. 5, 1998.

Mark A. Baker, Atlanta, GA, for movant.

Ann Reid, U.S. Dept of Justice—Tax Division, Washington, DC, for respondent.

## ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

This case is before the court on Debtor's objection to the claim of the United States of America, Internal Revenue Service ("IRS"). IRS filed a motion for partial summary judgment, challenging five bad debt deductions Debtor claimed on his 1988 federal income tax return.

On November 23, 1992, IRS assessed against Debtor income taxes in the amount of $135,786 for the tax year 1988 based upon a substitute for return because Debtor failed to file a return.[1] In 1996, Debtor filed a tax return for 1988 in which he claims losses for business bad debts in the aggregate amount of $125,645. The losses Debtor claims arise from funds paid to:

| | |
|---|---|
| Life Call franchise | $ 12,000.00 |
| Technetronics Plus | 39,880.00 |
| Technetronics, Inc. | 39,900.00 |
| Lakeside Minimart | 15,000.00 |
| Robert A. Galati | 18,865.08 |
| TOTAL | $125,645.08 |

IRS asserts that none of these claimed deductions are allowable under 26 U.S.C. § 166.

Debtor shows that 1988 was an exceedingly bad year for him. He was engaged in a bitter and painful divorce and custody battle with his wife. His business, Technetronics, Inc., in which he and Don Davidson were each 50% shareholders, failed and was dissolved as a result of a "falling out" between Debtor and Mr. Davidson. At a time when Debtor believed that he and Mr. Davidson had reached an amicable agreement regarding dissolution of the business, Mr. Davidson, without Debtor's knowledge or consent, withdrew the $36,000 balance in the Technetronics, Inc. bank account and disappeared. Also in 1988, Debtor sold stock, for which he realized capital gains shown on his 1988 tax return as $296,394.

In June, 1993, Debtor placed his business records in storage at a warehouse owned by Ben E. Price in Princetown, New York. When Debtor went to the warehouse in Au-

---

1. IRS filed a proof of claim in the total amount of $428,576.67, including $117,027.66 in tax, $169,385.68 in interest, and $68,955.29 in penal-ties for the year 1988. The total claimed by IRS for tax year 1988 is $355,666.63.

gust 1997 to retrieve those records, he discovered they had been destroyed in error by an employee of Mr. Price's. Therefore, records upon which Debtor bases the bad debt deductions are scarce. IRS points out that the records were destroyed in 1997, after Debtor filed the 1988 tax return in 1996, after Debtor filed this bankruptcy case, and after IRS requested production of the records upon which the tax return was based.

■ Pursuant to 26 U.S.C. § 166, a taxpayer is entitled to a deduction for a business bad debt in the tax year during which the debt became worthless. A business debt is:

(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or

(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

26 U.S.C. § 166(d)(2). To prove worthless, a taxpayer generally must show an identifiable event or events which render the debt valueless or uncollectible. *Cole v. C.I.R.*, 871 F.2d 64 (7th Cir.1989); *Estate of Mann*, 731 F.2d 267 (5th Cir.1984), *and cases cited therein.*

A nonbusiness bad debt is deductible as "a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year." 26 U.S.C. § 166(d)(1). Section 166 is

> intended to accomplish far more than to deny full deductibility to worthless debts of family and friends. It was designed to make full deductibility of a bad debt turn upon its proximate connection with activities which tax laws recognized as trade or business, a concept which falls far short of reaching every income or profit-making activity.

*Whipple v. C.I.R.*, 373 U.S. 193, 201, 83 S.Ct. 1168, 10 L.Ed.2d 288, *rehearing denied*, 374 U.S. 858, 83 S.Ct. 1863, 10 L.Ed.2d 1082 (1963).

> Devoting one's time and energies to the affairs of a corporation is not of itself, and without more, a trade or business of the person so engaged. Though such activities may produce income, profit or gain in the form of dividends or enhancement in the value of an investment, this return is distinctive to the process of investing and is generated by the successful operation of the corporation's business as distinguished from the trade or business of the taxpayer himself. When the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business since investing is not a trade or business and the return to the taxpayer, though substantially the product of his services, legally arises not from his own trade or business but from that of the corporation.

*Id.* at 202, 83 S.Ct. 1168. *See also, Campbell v. Walker*, 208 F.2d 457 (5th Cir.1953).

**Life Call franchise:** In 1988, Debtor purchased a Life Call franchise to sell safety equipment.[2] The evidence regarding the amount Debtor paid to purchase the franchise is unclear. In Debtor's statement of undisputed facts and in his deposition, Debtor states he purchased the franchise for $12,000. In his affidavit, Debtor states he purchased the franchise for $4,000 and expended $20,000 in 1988 to try to make the business a success. He attached to his affidavit a one page ledger sheet showing payments from March through December of 1988 in connection with Life Call. Also attached to the affidavit is a one-page income statement for Life Call for 1988, which shows income of $3,205.01 and expenses of $21,070.70.

■ Debtor concedes that the Life Call franchise does not support a valid business bad debt deduction because it did not cease operations until 1989. Debtor argues, however, that he should be allowed a deduction for the funds he expended as business expenses. Determination of Debtor's claim for a deduction for business expenses is not ripe, however, as he has not filed the applicable schedule to his tax return to claim the business expense deduction and IRS has not had an opportunity to examine available records in light of this new claim and to question Debtor to determine the allowability of such a deduction. The standards for determining

---

**2.** Specifically, Debtor sold and installed a home security device which facilitates the calls of individuals, especially elderly individuals, for emergency medical help.

expense deductions differ significantly from the standards for a bad debt deduction.

**Technetronics Plus:** After the dissolution of Technetronics, Inc. and the departure of Mr. Davidson, Debtor began operating basically the same business as Technetronics, Inc. has been as Technetronics Plus. Debtor specifically wished to continue using an appellation which customers could identify with the former business. Technetronics Plus continued to operate until entry of an injunction by the Supreme Court of New York on a complaint filed by Mr. Davidson. The court concluded that neither Debtor nor Mr. Davidson could do business using the name "Technetronics." That injunction issued sometime after January 13, 1989.[3]

As with Life Call, Debtor concedes that Technetronics Plus does not support a valid business bad debt deduction because it did not cease operations until 1989. Debtor argues, however, that he should be allowed a deduction for the funds he expended as business expenses. The only evidence Debtor presents in support of a claim for business expense deductions is a check register showing "several infusions of personal funds" into TP. Debtor also attached a copy of one cancelled check dated December 1, 1988. Both the check register and the cancelled check identify the funds as loans to TP. Debtor also presents an affidavit from Vivian Perez, who worked for Debtor as bookkeeper for Technetronics, Inc. and Technetronics Plus between 1986 and 1989. She states that "all personal money deposited by Mr. Healey was treated by me as a loan in the journals and not as earned income."

■ All the evidence which Debtor presented regarding his deductions with respect to Technetronics Plus show the funds he paid to it were loans. A loan is not an expense which may be deducted when made. *Horne v. Commissioner,* 59 T.C. 319, 1972 WL 2441 (1972), *aff'd,* 523 F.2d 1363 (9th Cir.1975). Therefore, Debtor is not entitled to deduct funds he loaned to Technetronics Plus as business expenses.

■ **Technetronics, Inc.:** At the time Debtor and Mr. Davidson decided to dissolve

Technetronics, Inc., a loan to the corporation from Key Bank was outstanding. When that loan went into default, apparently primarily because of Mr. Davidson's raid on the corporate checking account, Key Bank set off part of the outstanding balance on the loan with a certificate of deposit in the amount of $29,788.30 which Debtor had pledged to secure the loan. That setoff, however, did not occur until 1989. No debt existed, therefore, for purposes of deduction as bad debt, until Technetronics, Inc., had the unconditional obligation to pay Debtor a definite sum of money, and that obligation did not arise until the setoff occurred. *See, U.S. v. Henderson,* 375 F.2d 36 (5th Cir.), *cert. denied,* 389 U.S. 953, 88 S.Ct. 335, 19 L.Ed.2d 362 (1967). Therefore, the debt arising from the deduction would not be deductible for the 1988 tax year.

■ IRS argues that even if the setoff had occurred in 1988, it would not constitute a bad debt deduction for that year. IRS contends that Debtor's payments to Technetronics, Inc. were contributions to capital rather than loans. Factors to be considered in determining whether such payments are loans or contributions to capital are presence or absence of documents evidencing the indebtedness, presence or absence of fixed maturity date, source of payments, right to enforce payment of principal and interest, status of contribution in relation to regular corporate creditors, "thin" or inadequate capitalization, identity of interest between creditor and stockholder, source of interest payments, ability of corporation to obtain loans from third-party lender, extent to which advances were used to acquire capital assets, and failure of the debtor-corporation to repay on due date or to seek postponement. *Piggy Bank Stations, Inc. v. C.I.R.,* 755 F.2d 450 (5th Cir.), *cert. denied,* 474 U.S. 843, 106 S.Ct. 130, 88 L.Ed.2d 107 (1985); *A.R. Lantz Co. v. U.S.,* 424 F.2d 1330 (9th Cir.1970).

In the instant case, the objective evidence supports a conclusion that the payments by Debtor to Technetronics, Inc. were intended to be infusions of capital. Debtor made no

---

**3.** The complaint in which Mr. Davidson sought an injunction was filed January 13, 1989.

initial capital contribution to the corporation. Debtor has not alleged any promissory notes between Debtor and Technetronics, Inc. ever existed or that Technetronics, Inc. ever made any payments to Debtor in repayment of the "loans." Rather than attempting to protect his own employment, all the facts and circumstances indicate Debtor, as a 50% shareholder, was attempting to preserve the value of the company by financing its continued operation. The "loans" are disguised capital contributions. Therefore, Debtor is not entitled to a business bad debt deduction for the funds paid to Technetronics, Inc.

■ **Lakeside Minimart:** The Lakeside Minimart was a convenience store operated by Debtor's friend Pat Buckley. The store was destroyed by fire in 1988 and Mr. Buckley's landlord opted not to rebuild the store but offered Mr. Buckley the opportunity to purchase the property for $150,000. Debtor loaned Mr. Buckley $15,000 for the down payment for the purchase. Debtor also bought into a real estate investment partnership know as First Realty ("FR"). FR was "put together" by Debtor's accountant, Joe Scala, but the details surrounding this partnership, as set forth in Debtor's rambling affidavit, are vague and contradictory. Debtor's affidavit, when read together with Debtor's deposition testimony, indicate that FR providing financing to Mr. Buckley for the remaining $135,000 of the purchase price for the store property. On the day the sale to Mr. Buckley closed, Mr. Buckley transferred the store property to FR. Apparently, in connection with that transfer, the documents evidencing the $15,000 down payment loan as well as the $135,000 loaned by FR were cancelled. Mr. Buckely states in his affidavit that he paid rent monthly to FR until December 1994 or January 1995, when the property was foreclosed.[4] At his deposition, Debtor testified that he rolled over the $15,000 down payment loan as part of his buy-in to FR.

Debtor argues that when he purchased an interest in FR, he became engaged in the business of real estate investment so that his $15,000 down payment loan to Mr. Buckley was a business loan. Debtor asserts that the identifiable event which rendered the loan worthless was its cancellation when the property was conveyed to FR. Debtor's characterization, however, is illogical. First, Debtor's testimony at deposition, as well as Mr. Buckley's affidavit, supports a conclusion that Debtor's loaned the down payment to Mr. Buckley and thereafter Debtor "put together additional financing." Both Debtor and Mr. Buckley aver that Mr. Buckley signed a promissory note and confession of judgment for the $15,000 down payment loan. Thereafter, in connection with the transfer of title to the property to FR, the note was cancelled. Logic will not support a conclusion that the cancellation could have been accomplished without Debtor's consent. The transaction described by Debtor and Mr. Buckley depicts an investment, not a business bad debt.

**Robert Galati:** Debtor loaned $18,865.08 to Robert Galati, a neighbor, to void a foreclosure by the IRS on Galati's residence. Debtor obtained from Galati a confession of judgment to secure the loan but later discovered that the residence was titled solely in Galati's wife's name. At his deposition, Debtor testified that he believes Galati's debt may still be collectible. In Debtor's response to IRS' motion for summary judgment, Debtor concedes Galati's debt did not become worthless in 1988.

In conclusion, Debtor is entitled to a bad debt deduction for none of the five deductions he claimed on his 1988 tax return. With respect to Debtor's claim for business expense deductions in connection with Life Call for the 1988 tax year, Debtor may amend his tax return to properly reflect those claims. Accordingly, it is hereby

ORDERED that IRS motion for partial summary judgment is granted. It is further

ORDERED that, within 45 days of the date of entry of this order, Debtor may file an amendment to his 1988 tax return. He shall concurrently provide a copy of said

---

4. Neither Mr. Buckley nor Debtor provide any details regarding the foreclosure. It is unclear whether some third party foreclosed upon FR and, if so, who that third party was and what the grounds for the foreclosure were.

amendment and all records upon which he relied in support of that amendment to the attorney who appeared for the IRS in connection with this bankruptcy case and, during the 40–day period thereafter, he shall make himself available for examination by IRS. Within ten (10) days after expiration of that latter 40–day period, Debtor's attorneys and attorney for IRS shall confer in a good faith effort to settle the case and shall file a joint **Settlement Conference Certificate** certifying that a settlement conference has been held, whether the conference was in person or by telephone, the date of the meeting, and the names of all participants. The **Settlement Conference Certificate** shall also set forth opinions of counsel as to the prospects of settlement; specific problems, if any, which are hindering settlement; whether counsel intend to schedule additional settlement conferences; whether counsel desire a conference with the Court regarding settlement problems; and whether the parties wish the court to schedule a hearing on Debtor's objection to IRS' claim.